Wright-Blodgett Co., Ltd., vs. Elms.

No. 13,815.

WRIGHT-BLODGETT COMPANY, LIMITED, vs. CHARLES S. ELMS.

### SYLLABUS.

1. Where answers to interrogatories on facts and articles all taken together present a complete answer to all the interrogatories taken together, the court will not order one of the interrogatories to be taken for confessed on an objection that the answer to that particular interrogatory was evasive.

2. A party in answering an interrogatory on facts and articles may state some fact as to which he is not directly interrogated, if it tends to his defense and is closely linked to the fact on which he has been questioned.

3. Answers of a party to interrogatories on facts and articles relative to a verbal sale alleged to have been made by him of immovable property, which negative such a sale, cannot be contradicted by parole evidence.

4. A person in possession of writings received by him from another person which

do not *per se* evidence a sale by the latter to him of the real estate referred to in the writings, cannot, in order to establish such sale, eke out the writings by parole evidence on the ground that he had furnished a beginning of proof.

A PPEAL from the Twelfth Judicial District, Parish of Calcasieu—
*Read, J.*

*Pujo & Moss,* for Plaintiff, Appellant.

*Sompayrac & Toomer,* for Defendant, Appellee.

### STATEMENT OF THE CASE.

The opinion of the court was delivered by

NICHOLLS, C. J.  The plaintiff alleged that it had, on the 20th of December, 1899, purchased through its agent, from the defendant, certain described property, situated in the Parish of Vernon, aggregating about 3064 acres more or less.  That the agreed consideration for the purchase of said lands was $11,932.32, and that said consideration was to be paid cash to the said Elms upon execution of proper deed, and provided his title to said land was good and valid.  That on December 21, 1899, the said Elms notified petitioner in writing, in said capacity, that he would not make title to the land and that he intended to sell to some one else.

That, thereupon, petitioner made due and legal demand on December 21, 1899, in writing, for transfer of the lands in accordance with the previous purchase, and, in reply thereto, petitioner received a letter from said Elms, refusing to make said transfer, said letters being annexed for reference.

That petitioner had plats checked by the said Elms showing a description of the property and other written memoranda as to the acreage, and various prices for different portions of the land and total aggregate of the purchase price, but through a superabundance of caution deemed it proper to address interrogatories on facts and articles to the said Elms, to be answered in the manner provided by law.  That on the 23rd day of December, 1899, the said Elms informed the attorneys of petitioner that he would not deed the land to him, hence petitioner averred that no formal tender was necessary.

That petitioner purchased the above described property for the con-

sideration of $11,932.32 to be paid cash, which he was ready and willing to do upon the execution of proper transfers of the property, with good and valid title, and he verily feared that the defendant, Elms, would take advantage of the fact that he had not executed acts of sale for said property to petitioner, and sell or dispose of it to some one else during the pendency of this suit, to the great and irreparable injury and damage of petitioner.

That petitioner was entitled to the issuance of a writ of injunction, prohibiting the said Elms from selling or disposing of the property hereinbefore described during the pendency of this suit. That he was, also, entitled to have interrogatories on facts and articles annexed, answered on oath and categorically.

The premises considered, petitioner prayed that a writ of injunction issue, restraining and prohibiting the said Charles S. Elms from selling or disposing of the property described during the pendency of the suit. That the interrogatories on facts and articles annexed should be answered on oath and categorically at such time as might be fixed, or upon his failure so to do, the facts concerning which he should have so refused and neglected to answer, should be taken as confessed.

That he might be duly cited; and after legal delays and due proceedings that petitioner do have and recover judgment maintaining the writ of injunction sued out and commanding and ordering the said Elms to execute and deliver to petitioner, within a reasonable time after the rendition of said judgment, good and valid title to the property hereinbefore described upon payment of the purchase price thereof.

An injunction issued as prayed for, and the defendant was ordered to answer, in open court, the interrogatories on facts and articles propounded on the second day of the next session of court.

The interrogatories propounded were:

1st.—Whether he did not on the 20th of December, 1899, sell to the plaintiff through their agent, Michael Kelly, for cash, the land described in the petition?

2nd.—Was not the aggregate of the purchase price thereof $11,-932.32?

3rd.—Were not 2919 30-100 acres sold to said company at $4 per acre, and 41 91-100 acres at $3.50, and 203 39-100 acres at $2.50 per acre?

4th.—Have you not refused to execute and deliver proper and sufficient title thereof to said company?

5th.—Have you not attempted to sell this land to some one else, and for a greater sum to your profit, net?

Plaintiff filed an amended petition, in which it alleged that the company was a partnership association, limited, organized under the laws of Michigan, and that Michael Kelly was at the time of the filing of the petition and was still, a partner in said association. That said Kelly was the agent of said partnership association at the time of the petition, and that at said time there was no other member of said association, or agent therefor, in the State of Louisiana.

That the defendant sold the property described in the original petition on the 20th day of December, 1899, by his written proposition to that effect, which was accepted by the plaintiff company as embodied in the eight plats, and the copy of the letter which it attached and made part of its amended petition. That the prices asked for the defendant properties by the defendant and agreed to by the plaintiff were as given in the statement, embodied in this supplemental petition. That said plats, upon which were checked the description of the land sold to the plaintiff, together with the prices thereon, were delivered by the defendant to Michael Kelly as agent of the plaintiff on the 20th of December, 1899, and said checks and prices were in the handwriting of the defendant and contained a complete and full description together with the prices of the land purchased by the plaintiff. The plaintiff annexed to this petition interrogatories on facts and articles which it prayed the defendant might be ordered to answer in open court, or, in default thereof, that they be taken for confessed. Defendant was ordered to answer the interrogatories in open court.

The interrogatories propounded were: 1st.—Is not the checking in blue pencil, together with the prices appearing in the eight township maps attached to the supplemental petition, in your handwriting? 2nd.—Were not these checks and prices made by you? 3rd.—Did you not deliver said eight township maps to Michael Kelly in the presence of Chester Brown at about 6 o'clock P. M. December 20th? 4th.— Did you not receive a letter from Messrs. Pujo & Moss of date December 21st, a copy of which was annexed to the supplemental petition? 5th.—Did you not telegraph, on December 20th, 1899, to Mr. Ernest Wesche or J. D. Lacy, of New Orleans, that you had sold the land described in said plats to Wright-Blodgett & Co. or to Mr. Michael Kelly? If you say you did not, attach original or copy of telegram sent to said party concerning the lands in dispute. 6th.—Did you not,

when the plats were delivered to Mr. Kelly, in presence of Mr. Chester Brown, say: "Here are the descriptions and the prices; the lands are yours"—or words to that effect? 7th.—Did you not write or have written and signed the letter of date December 21st, 1899, addressed to Mr. M. Kelly, agent of the Wright-Blodgett Co., attached to the supplemental petition?

The plaintiff excepted to answering the interrogatories on facts and articles on the ground that plaintiffs "were not in possession nor pretend to have ever been in possession of the lands to which they advert."

The court overruled the exception, and the plaintiff, under the reservation of the exception, answered as follows:

### To the original interrogatories.

Answer to 1st interrogatory. No.

Answer to 2nd interrogatory. As there was no definite sale between Mr. Kelly and myself, I did not aggregate his prices which I was considering and which I expected to accept in the event of Mr. Underwood not accepting the land.

Answer to 3rd interrogatory. As there was no definite sale between Mr. Kelly and myself, I did not aggregate the acreage sold at different prices.

Answer to 4th interrogatory. Yes.

Answer to 5th interrogatory. Yes; for I considered the lands sold to Mr. Underwood for a greater price than Mr. Kelly offered me.

### Answers to supplemental interrogatories.

To 1st interrogatory. Yes.

To 2nd interrogatory. Yes; they simply reduced to writing Mr. Kelly's offer for the land.

To 3rd interrogatory. Yes.

To 4th interrogatory. I did.

To 5th interrogatory. I did not. (Here witness offered ten telegrams and answers.)

To 6th interrogatory. I did not.

To 7th interrogatory. I did.

Plaintiff suggesting that defendant's answers to interrogatories 2 and 3, annexed to the original petition, had not been answered categorically; that the answers were evasive, insufficient and not responsive, prayed that they might be taken for confessed.

The court ordered the answers to be struck out, but refused to have the interrogatories taken for confessed.

The defendant answered, pleading first the general issue. He then alleged that the injunction which had issued was wrongfully, libelously and maliciously, sued out; that it was obtained without ground in law or equity, and it should be set aside. He prayed that it be dissolved, with damages, in the sum of nine thousand dollars, for which he asked judgment in reconvention. This claim in reconvention was subsequently discontinued under reservation of defendant's right to sue for the same in another action.

The injunction was dissolved by judgment of court on the 14th of January, 1900.

J. Platt Underwood, whose name was mentioned in the interrogatories on facts, filed an intervention, joining the defendant in his prayer to have the injunction set aside; but he discontinued the same before the case went to trial. In his petition he claimed that on the 20th of November, 1899, the defendant had given authority until the 6th of December, 1899, to T. D. Lacy & Co., brokers, in New Orleans, to sell these lands. That the authority to sell had been extended to December 20, 1899. That on this last date, and before the expiration of the authority conferred upon them, Lacy & Co. agreed to sell the lands to him. That he had caused the evidence of this agreed sale to be properly and duly recorded, but the formal deeds of sale had not yet been executed by reason of defendant's injunction; but he had demanded of the defendant that deeds should be executed. He denied that the defendant had ever sold the lands to the plaintiff company; but if he had, the sale would have no effect as against his recorded claims, as no evidence of said sale from the defendant to the plaintiff had been recorded. He prayed that the plaintiff's demand be rejected.

The District Court dissolved the injunction, rejected plaintiff's demand, and dismissed his suit with costs. The plaintiff appealed under an order of appeal granted by the clerk of court in the absence of the district judge.

The defendant moved to dismiss the appeal on the ground that no return day had been fixed by any officer authorized and empowered to fix the same. That the order of the clerk of court fixing the 14th day of January, 1901, for the return day of said appeal was null, void and of no effect, because the right power and authority to fix the return day of an appeal from the District Court from the Parish of Calca-

sieu was vested solely in the judge of the Fifteenth Judicial District Court. That it was at suggestion of counsel for plaintiff and appellant that the clerk fixed the day. In the event this ground be deemed insufficient, defendant moved, as another ground for dismissal, that the appeal bond filed by the appellant was not signed by a surety competent to sign the same; that it was patent on the record that W. J. Martin, who signed said bond as surety, was not in law a competent surety because he was surety on the injunction bond, and the injunction was dissolved.

## Opinion.

### On Motion to Dismiss.

The motion is denied. The second ground assigned has not been urged, and the first is not well grounded. The district clerk had authority to fix the return day.

### On the Merits.

Plaintiff's action was based upon the theory and allegation that a sale of certain lands had been made between themselves and the defendant on December 20, 1899, but that no formal act of sale had been executed between them; that, in consequence of that fact, the situation was such as not to enable them to place of record the rights and obligations of the parties in Calcasieu Parish. That the defendant was not only in position to avail himself of that circumstance to dispose of the lands to third parties to their prejudice, but that he was in fact about to do so, and that an injunction was necessary for the protection of their vested right of ownership.

The situation, as disclosed by the evidence, is that the defendant was a dealer and also a broker in real estate; that it was a customary method in Calcasieu Parish for parties desiring to sell lands, to give to parties engaged in the brokerage business what are termed "options" extending up to a certain period, and having obtained them, the brokers to grant themselves similar options to parties desiring to purchase from them these same lands or others. These dealers or brokers, with a view to their business, had supplied themselves with plats of the lands in different townships and ranges. It appears that the defendant had on, and prior to December 20, 1899, granted one of these "options" for the lands involved in this litigation to Lacy & Co., brokers in land in New Orleans, who were acting in this matter for

and on behalf of one J. Platt Underwood. This option was to extend up to and include the 20th of December. The plaintiff company, it would appear, was desirous of purchasing these same lands, and the defendant was uncertain of the final action of Lacy & Co., or Underwood in the matter. Under these circumstances, the plaintiffs, through their agent, Kelly, and the defendant, at a meeting between them on December 20, 1899, entered into negotiations with each other looking to a sale of these properties to the plaintiff. The lands were of different kinds and of different values. The defendant, being in possession of plats of the townships in which the lands were situated, exhibited them to Kelly, and in the course of the negotiations different sections and sub-divisions of townships were checked by the defendant with a blue pencil mark, and on some of these plats, either at the foot of the plat, or in the body of the same, are given in lead pencil the acreage of, and the price of, different tracts. When the parties parted, the plats were placed into the possession of Kelly. There is no written evidence of what occurred at the interview between the parties. The plaintiff relies upon Kelly's possession of these plats with the check marks and the figures upon them, coupled with what they aver defendant said and did upon the occasion of the interview between himself and Kelly, as having given rise to a completed sale of the property by the defendant to the plaintiff. That these plats, with the marks and figures upon them, did not *per se* evidence a sale of the properties, is evident.

When produced, we are left in the dark as to what the facts and the circumstances were under which these marks and figures were placed upon the plats, and those under which the plats themselves were delivered to Kelly. The plaintiffs themselves were aware when they instituted this action of the insufficiency of the evidence which they held to make their claim of title good, for they were forced to have recourse in order to supplement the presumptions which they thought might arise from their possession of the plats, to propounding interrogatories on facts and articles to the defendant as to what took place between them at the interview.

The defendant answered the interrogatories after unsuccessfully excepting to the right of the plaintiff to propound the same to him. In support of the objections so urged by him, he relied upon the provisions of Articles 2440, 2275 and 2462 of the Civil Code.

These articles declare that every transfer of immovable property

must be in writing; but if a verbal sale or other disposition of such property be made, it shall be good .against the vendor as well as the vendee, who confesses it when interrogated on oath, provided actual delivery has been made of the property thus sold. (Article 2275 C. C.) That all sales of immovable property shall be made by authentic act or under private signature. That except as provided in Article 2275, every verbal sale of immovables shall be null as well for third persons as for the contracting parties themselves, and the testimonial proof of it shall not be admitted (C. C. 2440); that a promise of sale amounts to a sale when there exists a reciprocal consent of both parties as to the thing and the price thereof, but to have its effect, either between the contracting parties or with regard to other parties, the promise to sell must be vested with the same formalities as are prescribed in Articles 2439 and 2440, concerning sales in all cases where the law directs that the sale shall be committed to writing.

The defendant contended that the plaintiffs did not pretend that they were in possession of any of the lands which they claimed to have purchased.

The answers given by the defendant negative the pretentions of the plaintiff company. The latter moved to have the answers given by the defendant to the 2nd and 3rd interrogatories annexed to the original petition, struck out, and that the facts in respect to which the questions were asked should be taken for confessed, for the reasons that they were evasive. The court struck out the answers, but refused to have the interrogatories taken for confessed.

The precise relevancy and bearing of the answers given by the defendant do not appear on the face of the questions and answers themselves, but do appear when read by the light of the pleadings and the evidence taken on the trial. We think the court's refusal to allow interrogatories Nos. 2 and 3 to be taken for confessed, was correct. In Bond vs. Bishop, 18 Ann. 547, it was held that "where the answers to interrogatories on facts and articles, all taken together, present a complete answer to all interrogatories taken together, the court will not order one of the interrogatories to be taken for confessed, for the reason that the answer to that particular interrogatory appears evasive, it appearing that it has been fully answered in the answer to another interrogatory."

We adhere to this ruling, which is applicable to that made in this case by the district judge. Under the view we take of the rights of

parties, the action of the District Court in striking out the particular answers made by the defendant to interrogatories Nos. 2 and 3 does not affect the situation, but these answers state facts closely linked with the subject matter under investigation and to the questions asked, and defendant, in our opinion, was authorized to give the answers he did, under the terms of Article 353 of the Code of Practice. That article declares that "in answering a question the party must simply confess or deny the fact." Nevertheless the party interrogated may state some other facts tending to his defense, provided they be closely linked to the fact on which he has been questioned and an appeal made to his conscience."

His declaration in such a case shall have as much effect as his answer to the question itself.

On the trial of the cause the plaintiff attempted to contradict the answers given by the defendant to the interrogatories propounded by the testimony of Kelly and one Dickens, but was met by the objection of the plaintiff that answers of a party to interrogatories on facts and articles as to a verbal sale of immovable property could not be contradicted by parole evidence; that the provisions of Article 354 of the Code of Practice to the effect that "the answers of the party interrogated are evidence, but do not exclude adverse testimony, and that they may be destroyed by the oath of two witnesses or of one single witness corroborated by strong circumstantial evidence, or by a written evidence," do not extend to answers touching verbal sale of real estate.

This court has frequently decided that the answers of a party interrogated as to a verbal contract to transfer real estate can not be contradicted by parole evidence (C. C. 2255-2415); that the law forbidding parole proof of such transfers could otherwise be evaded by putting interrogatories under a charge of fraud and contradicting the answers when in the negative. That Article 354 of the Code of Practice must be construed with other provisions of law, and authorizes oral evidence only when admissible. That when answers supply the place of written proof in cases where such proof is necessary, they cannot be contradicted by parole.

(Bach vs. Hall, 3 La. 119; Haydell vs. Batts, 6 Rob. 438; Bauduc vs. Conrey, 10 Rob. 473; Marionneaux vs. Edwards, 4 Ann. 103; Stocks vs. Ferguson, 10 Ann. 132; Semere vs. Semere, 10 Ann. 704; Knox vs. Thompson, 12 Ann. 114; Godwin vs. Neustadt, 42 Ann. 739.)

The testimony objected to was permitted to be introduced. Kelly,

plaintiff's agent, and one Dickens, testified in respect to the alleged sale.

This testimony should not have been admitted, and having been received over defendant's exceptions thereto, it can have no effect. Were we to recognize plaintiff's title to the lands in controversy, it would be the recognition of a title resting essentially upon parole evidence. The plats annexed to plaintiff's petition with the pencil's marks and figures thereon prove nothing *per se* in regard to a sale of these lands. In order to give them any probative force it would be necessary that plaintiff's connection therewith should be established.

If through answers by plaintiff to interrogatories on facts and articles, which are authorized under certain proper circumstances to be propounded, he had admitted that the marks and figures on the plats had been made by himself, and that the plats with such marks and figures upon them had been placed by him in the possession of the plaintiff, there would still be lacking proof essential to the establishment of a sale of immovable property. The evidence of an *"aggregatio mentium,"* as to the transfer of the ownership of the property of a consent to a sale would be lacking.

Consent is the essential basis of a contract of sale, and in the absence of consent, shown by legally authorized evidence, there could be no shifting of title. The mere receipt by plaintiff from the defendant of these plats with marks and figures placed upon them by the latter, would give rise to no presumption of a sale between the parties of the lands appearing therein. This could have well happened and been done for purposes entirely distinct from a sale. The evidence of a legal character furnished by the plaintiff herein falls short of the proof needed for the establishment of a sale. The proof furnished did not advance far enough for that purpose in the direction of written proof, and the plaintiff was not authorized to eke out insufficient legal evidence by parole evidence on the ground of some "beginning of proof."

In the case of Patterson vs. Blois, 4 La. 378, this court, referring to this subject, said: "The introduction of parole evidence has, however, been attempted to be claimed on the ground of some beginning of proof. Whatever may have been the law in regard to the faculty of introducing parole evidence after offering a beginning of proof in writing, our present Codes are absolutely silent in this regard; and the former part of our jurisprudence must share the fate of the legal provisions existing before the new Codes of which they make no mention.

The parole testimony referred to having been illegally received and plaintiff's case being deprived without it of any basis to rest upon, it would serve no good purpose to discuss it. It is sufficient to say that it is wholly at variance with plaintiff's version of the situation.

After the court had permitted Kelly and Dickens to give testimony in the case, the defendant, under reservation and benefit of his exceptions thereto, was placed upon the stand in rebuttal. His testimony was simply an amplification of his answers to the interrogatories which had been propounded to him. He positively negatived the testimony of these two parties. We must not be understood as intimating that plaintiff would have made out its case had the testimony of Kelly and Dickens been legally admissible.

We are of the opinion that the judgment of the District Court herein appealed from is correct and it is hereby affirmed.

PROVOSTY, J., takes no part.