(38 South. 155.)

No. 15,377.

LEVY v. LEVY.

(Feb. 27, 1905.)

VENDOR AND PURCHASER—SALE OF IMMOVABLES—CONTRACT—PAROL EVIDENCE.

1. Negotiations looking to the creation of a contract of promise of sale of immovable property contemplate a contract to be evidenced by writing.. Until there be such, either party to the negotiation is at liberty to withdraw.

2. Parol evidence is admissible to prove that, on defendant's verbally accepting a proposition made to him by the plaintiff to sell him his interest in certain real estate, the plaintiff ,at once verbally withdrew his proposition.

(Syllabus by the Court.)

Appeal from Eighteenth Judicial District Court, Parish of Lafayette; Conrad De Ballion, Judge.

Action by William Levy against Moses Levy. Judgment for plaintiff. Defendant appeals. Affirmed.

John L. Kennedy and McCoy & Moss, for appellant. Orther C. Mouton, for appellee.

Statement of the Case.

NICHOLLS, J. The plaintiff and the defendant are brothers. The present action was filed on the 14th of March, 1904. Its object is for the partition between them by licitation of certain real estate in the parish of Lafayette, the brothers owning each an undivided half interest therein. The petition contains the allegations usually employed in suits of that character.

Defendant answered. After pleading a general denial, he admitted that the property sought to be partitioned belonged in indivision to himself .and the plaintiff in equal shares, and that it was indivisible in kind without loss and inconvenience. He specially denied that plaintiff and himself had been unable to make an agreement in reference to the sale of the property. He averred that, on the contrary, a proposition was made in writing by plaintiff to him, offering to buy defendant's share in the property for $2,500, or to sell to defendant his own share for the same price, at the option of defendant; that defendant made a written acceptance of the plaintiff's offer to sell, and tendered to him the purchase price, and that the plaintiff thereupon fraudulently and illegally refused to complete the sale by delivering the necessary deed to defendant. Assuming the position· of plaintiff in reconvention, defendant averred that under the terms of the contract above set forth he was entitled to judgment condemning plaintiff to execute· its provisions. He prayed that plaintiff's demand for a partition by licitation be rejected, and that he himself have judgment condemning plaintiff to execute an act of sale to him of his undivided half of the property described for the price and sum of $2,500.

On the 7th of June, the defendant filed in court the following writing:

"William Levy vs. Moses Levy. No. 4418.

"Now comes the defendant in the above numbered and entitled action and as evidence of his

good faith in the accepting of the proposition on part of plaintiff as fully set forth in his answer hereto, desires to renew the tender of $2500 previously made which tender is herewith made in open court and the money deposited with the register thereof to be delivered to plaintiff upon his executing a good and valid deed vesting defendant with his undivided half interest of said property.

"Wherefore premises considered defendant prays leave to make said tender, and further adopting the prayer of his original answer prays that plaintiff be condemned to transfer unto defendant the plaintiff's undivided interest in the property described in the petition for the sum and price of $2500, payment of which is hereby tendered."

The district court rejected defendant's reconventional demand, and rendered judgment decreeing a partition of the property by licitation for cash for the share of the plaintiff, and on such terms for the defendant's share as he might desire. Defendant appealed.

The first step brought to our attention touching the issue raised in defendant's reconventional demand is a letter written on the 4th of October, 1903, by the plaintiff, William Levy, not to his brother Moses, the defendant herein, but to Armand Levy, another brother, with whom he and the defendant were partners in a commercial partnership in Beaumont, Tex. In that letter the plaintiff wrote:

"Not hearing from you in reply to my letter I have come to the conclusion that Mose (the defendant) has ignored my proposition. I know the other proposition was satisfactory to you for what Ike told me. I will make you another proposition and that is this. I will buy Mose's interest in our property which we have together for the sum of $2500, or sell my interest for that amount. I don't only think but I know it is a liberal offer on my part and if he don't think so, he's perfectly welcome to buy mine for the amount stated. He will have to sell or buy one day sooner or later and I know as well as you do that he will not realize what I am offering for it. That puts our property at the valuation of $5000, and if Moses thinks that is not enough he is certainly welcome to mine. * * * I hope you will consider and explain to Mose so he can do one thing or the other."

On the 14th of January, 1904, plaintiff wrote to the defendant from Lafayette a letter from which the following extract is made:

"The cement walk will soon be near our own property and it will cost two hundred dollars. * * * I will be in Lake Charles some time next month to settle our business with you all. * * * Our properties here are bringing no monie and as soon as we settle in Beaumont my offer as before is open to you for your interest. I hope and trust we will settle in a nice friendly way as I am not out for trouble."

On the 11th of March, 1904, the plaintiff wrote to the defendant from Lafayette, stating that he would leave for Lake Charles, and referred to a settlement of the commercial partnership on that visit; stating, also:

"The property here will also be settled at once. Your choice to buy or sell. There will be to whoever buys an expense of $400 to put down for the cement walk and the removal of the house on the property."

On the 18th of March, 1904, the following letter to the plaintiff was written by the defendant:

"I hereby accept your proposition made in letters dated October 4th, 1904, and January 14th, 1904, to sell and convey to me for $2500 your undivided half interest in and to the following described real estate owned and held by us in indivision in the city of Lafayette, to-wit [describing it], and in accordance with your proposition and this acceptance I beg to tender you herewith the sum of $2500, and respectfully demand that you give me a deed for the above described property."

This letter was answered on the same day by the plaintiff. In his reply he said:

"I have already withdrawn my offer to sell my half interest in the property we own in common in Lafayette made sometime back, as you well know, but I again advise of this withdrawal."

The parties in the meantime had had a meeting in Beaumont on the 14th of March, at which were present, besides themselves, Armand Levy and D. Mossiker. Mossiker testified that he was present at that meeting; that William Levy made Moses an offer to buy and sell his share of the property in common for the sum of $2,500, or sell for that amount. Mr. Moses Levy accepted it,

and he went to his desk to write up the check (witness presumed it was a check), when Mr. William Levy says: "You need not finish it. I won't accept it." When he made him that proposition "there was a few remarks on either side to my recollection, and William Levy said, 'I will take $2,500 cash for my share,' and Moses Levy said, 'Will you sell it to me on time?' and Willie Levy said, 'No; I need the cash.' Moses said, 'Then, since nothing else but the cash will do you, all right.' Then he went to the desk, which was a little distance from where they were, and proceeded to write what appeared to be a check." Witness could not say positively that it was a check, but it looked to him like a check. Then Willie called to him, "You needn't finish it."

Armand Levy testified that he was present. William made Moses the proposition to sell for $2,500, and Moses said, "I will accept your proposition," and started to the desk (witness presumed) to write a check, and Willie said, "I withdraw my proposition; you needn't make it out."

The defendant, being on the stand, was questioned by his counsel, and answered as follows:

"Q. At that time while your brother, the plaintiff, was in Beaumont, did he renew his offer to buy or sell for $2,500?
"A. Yes, sir.
"Q. Did you accept it or reject that proposition?
"A. I accepted it at once.
"Q. When he made the verbal proposition?
"A. I accepted at once.
"Q. Did you make any offer of payment at that time?
"A. Yes, sir.
"Q. In what manner—in money or check or otherwise?
"A. Check.
"Q. Did the plaintiff at that time offer to give you the deed?
"A. No, sir.
"Q. And following that, on the 18th, you came to Lafayette, and tendered the money?
"A. Tendered the cash.
"Q. What, if any, reason did the plaintiff decide when you made the acceptance on the 14th?
"A. That he would not accept that amount."

Defendant testified that plaintiff had never withdrawn in writing his proposition to sell prior to the 18th of March, when he tendered him the cash, but did withdraw it verbally after he accepted the same, and before the tender of the 18th of March. Defendant did not, prior to the 18th of March, offer plaintiff $2,500 in cash. He had offered a check. Plaintiff withdrew his proposition verbally in Beaumont. He refused immediately, as soon as witness declared his intention to accept. Witness accepted immediately after plaintiff made the proposition. Defendant had never answered plaintiff's letters.

Armand Levy testified that on receiving the letter of the 4th of October, 1903, from the plaintiff, he had forwarded the same by mail to the defendant, who said that he was in no position to buy, and he would not sell. Witness told the plaintiff of this answer.

### Opinion.

On the trial both parties objected to the introduction of parol evidence; plaintiff to any going to establish a verbal acceptance of his proposition to sell, and defendant to any going to show plaintiff's withdrawal from his proposition subsequently to such verbal acceptance. The court, under bills of exception, allowed the testimony to establish both points. Defendant's contention is that on his acceptance of the proposition the property became at once his, and he could not be subsequently divested of his title by a verbal proof of a verbal withdrawal of the proposal. The plaintiff, on the other hand, contends: That article 2275, Civ. Code, provides that every transfer of immovable property must be in writing; but, if a verbal sale or other disposition of such property be made, it shall be good against the vendor as well as against the vendee, who confesses it when interrogated on oath, provided actual delivery has been made of the immovable property thus sold.

That article 2463 declares that a promise to sell amounts to a sale when there exists a reciprocal consent of both parties as to the thing and the price thereof; but to have that effect, either between the contracting parties or with regard to third parties, the promise to sell must be vested with the same formalities as are above prescribed in articles 2439 and 2440, concerning sales in all cases where the law directs that the sale be committed to writing.

Article 2440 declares that all sales of immovable property shall be made by authentic act or under private signature. Except as provided in article 2275, every verbal sale of immovables shall be null as well for third persons as for the contracting parties themselves, and the testimonial proof of it shall not be admitted.

Articles 1801 and 1802 declare that:

"The party proposing shall be presumed to continue in the intention which his proposal expressed on receiving the unqualified assent of him to whom the proposition is made if he do not signify the change of his intention. He is bound by his proposition and the signification of his dissent will be of no avail if the proposition be made in terms which evidence a design to give the other party the right of concluding the contract by his assent, and if that assent be given within such time as the situation of the parties and the nature of the contract shall prove it was the intention of the proposer to allow."

In this case the proposed contract was of immovable property, which the law itself declared should be proved by writing. Both parties, therefore, must, for the completion of the contract, have looked to the execution of writings between them before they should be reciprocally bound. There should be mutuality of obligations for that purpose. Both parties must be presumed to have known the law, and the negotiations between them must be held to have been made with reference to it without special agreement on the subject. If matters between the defendant and the plaintiff had proceeded no further than the verbal acceptance of plaintiff's proposal, plaintiff could not, under the circumstances, have held him to a specific performance of a contract of sale of the property.

If the plaintiff could not have held defendant bound to a specific performance at that stage under that condition of affairs, defendant could scarcely expect to hold the plaintiff. It was an easy matter for him to have closed the negotiations had he taken the proper precautions. As it was, we think plaintiff was still in position to withdraw his proposition, which we may say was not full and complete, either as to the description of the property or the exact terms upon which the sale was to be made. The testimony shows that questions had to be asked and answered before the parties could come to a definite understanding as to what was to be done in the premises. Defendant admits in his pleadings that he and the plaintiff were still joint owners of the property when he filed his answer, and he seeks to give to the agreement which he asserted had been formed between them, not the character of a sale, but of a "promise of sale" in the nature of things executory in character. Wright v. Elms, 106 La. 160, 30 South. 311.

We are of the opinion that parol testimony was properly admitted to establish the withdrawal by the plaintiff at Beaumont of his proposition. It was simply proof of a fact, and that fact went, not to undo a contract of sale, but to prevent one from being completed. Stanley v. Addison, 8 La. 210.

For the reasons herein assigned, the judgment appealed from is hereby affirmed.