SUCCESSION OF CHAUNCEY GOODRICH — GEORGE W. COPLEY, 6r 107
Appellant.                                                            113  699
                                                                     6r  107
                                                                     116  955

Purchasers at Sheriff's sales cannot be affected by irregularities occurring after the sale—no act of the Sheriff, subsequent to the sale, can affect his rights. The adjudication made by him has, of itself, the effect of transferring to the purchaser all the rights and claims of the party in whose hands the property was seized. C. P. 690. It is the last proceeding which concerns the purchaser; it fixes his condition, and is the basis of his title.

The return of the Sheriff on a *fieri facias* is not conclusive as to the facts stated by him, and the purchaser cannot be prejudiced by it. Parol evidence is admissible to explain any ambiguity in it, and to show, beyond the contents of the return, that the formalities required by law for the validity of Sheriff's sales had been complied with, and how they were fulfilled.

One claiming under a Sheriff's sale who produces the judgment, execution, and Sheriff's return, showing the adjudication to him, has nothing else to show in support of his title. It is for the opposite party to establish any irregularity or informality in the sale.

APPEAL from the Court of Probates of Ouachita, *Lamy*, J. *Copley*, appellant, *pro se*.

*McGuire*, contra.

SIMON, J. This case was before us last year, (see 3 Robinson, 100,) and was remanded for further proceedings. Since then, the subject matter of this controversy has been regularly tried before the lower court, and judgment having been rendered against Copley, he has appealed.

The facts of the case are these: J. E. Faulk, sometime in February, 1836, having sold a tract of land to one Baker, retained a mortgage thereon to secure the price. In October following, Baker sold the same land to Goodrich, received a part of the price in cash, and took two notes for the balance, to wit: one for $875, payable on the first of February, 1837, and another for $1000, payable on the first of February, 1838. A mortgage was also retained to secure the payment of the notes. In September, 1837,

Faulk sued Baker for the amount due on the price of the land, and obtained a judgment against his debtor, by virtue of which a writ of execution was subsequently issued.    This execution was levied upon the two notes given to Baker by Goodrich, and these notes were adjudicated at a Sheriff's sale to Faulk, for the sum of $915 cash, being two-thirds of the appraisement.    This took place in the beginning of the year 1838, and the Sheriff's return, which is very incomplete, does not show how or to what extent the formalities of the law were complied with, except that he states that the notes were duly advertised for sale.

At a subsequent period, (January, 1841,) Copley, who had obtained a judgment against Baker, issued an execution by virtue thereof, which was levied upon the two notes of Goodrich, though those notes were not produced, and they were, after due proceedings, adjudicated to Copley for the sum of *five dollars*, payable at twelve months credit.

The present suit is brought by G. W. Copley, the purchaser of said notes at the last Sheriff's sale, against Faulk, as the curator of the estate of Goodrich, in order to recover the amount thereof from said estate ; and said curator alleges, that the debt claimed does not belong to the petitioner, but to himself (Faulk) individually.

On the trial of this cause below, Faulk introduced several witnesses for the purpose of explaining the Sheriff's return on the first execution, and of proving facts connected with the sale, so as to establish the legality of the Sheriff's proceedings.    This was objected to by Copley ; but the Judge, a quo, having received the evidence to explain an ambiguity and to identify the notes, but not to contradict the Sheriff's return, Copley took his bill of exceptions.

We think the Judge, a quo, did not err.    It is a well recognized principle in our jurisprudence, that purchasers at Sheriff's sales cannot be effected by irregularities which occur after the sale, (3 Mart. N. S. 490 ;) and we agree with the counsel of Faulk, that no act of the Sheriff, after the sale of personal property, can affect the purchaser's rights, provided he prove that the sale was made in a legal manner.    Article 690 of the Code of Practice says, that " the adjudication made by the Sheriff has, *of itself alone,* the ef

fect of transferring to the purchaser all the rights and claims which the party in whose hands it was seized might have had to the thing." Thus, the adjudication once legally made, it matters not how the Sheriff makes his return, as the purchaser has nothing to do with the subsequent formalities, and is not to be affected by any subsequent irregularities. Now, the object of the evidence admitted by the lower court was, to explain the Sheriff's return, in relation to an ambiguity which exists in it, and to identify the notes sold. It might have been introduced to show, beyond the contents of the return, not only that the legal formalities had been complied with, but also how they were fulfilled, as the statement of the Sheriff not being conclusive as to the facts therein contained, the purchaser cannot be prejudiced by the manner in which the Sheriff makes his return. The adjudication, in the sense of the law, is the last proceeding which concerns the purchaser; it fixes his condition under it, and is the basis of his title. 14 La. 17. We are of opinion, that Faulk was properly allowed to introduce parol evidence, to explain an ambiguity in the Sheriff's return, (9 La. 565; 15 La. 312,) and even to show that the formalities required by law for the validity of Sheriff's sales, had been regularly complied with.

On the merits the evidence shows, that at the time of the sale to Faulk, Copley interfered with the sale; that he caused the Sheriff to postpone it, and to re-advertise it ; that Copley knew that said sale was to take place, and that the debt which the Sheriff was about to sell was the same due by Goodrich, for the purchase of the land. The Sheriff who made the first sale, states that Copley came and forbade the sale, whereupon he postponed it, thinking that Copley was Baker's attorney, and had a right to interfere. It is further shown, that when Copley ordered the Sheriff to seize and sell the notes on the second execution issued at his own request, the latter told him that he could not do it, as they had already been sold previously at the suit of Faulk. Copley told the Sheriff to go on with the sale, that it was none of his business where the notes were, and that they must be sold. Another witness proves, that previous to the second sale, Copley examined carefully the return on the first execution, and then ordered the Sheriff to seize the rights of Baker to the notes, and to sell them

under the execution, under which he pretends to have bought them.

With regard to the legal formalities, it seems to us that the evidence shows satisfactorily, that they were regularly complied with. Notice of seizure was served on the party, as also a notice to appoint an appraiser. The return of the Sheriff shows, that the sale was duly advertised, and that the notes were adjudicated to Faulk for two-thirds of the appraisement. If any irregularities exist in the sale, or if any of the legal formalities were neglected by the Sheriff, it was the duty of Copley to establish them; for, Faulk, after having produced the judgment, execution, and Sheriff's return showing the adjudication, had nothing else to show in support of the validity of his title. 8 La. 423; 9 La. 542; 16 Ib. 422, 554, and 19 Ib. 307.

Upon the whole, we are induced to believe from the evidence, that this is an attempt to carry into effect an unjust speculation. Copley, being an attorney at law, thought, perhaps, that Faulk's title, from the vague statement made by the Sheriff in his return, was defective; and that, by selling the notes a second time, he might perhaps succeed in annulling the sale made to Faulk. For this purpose he procured an execution to issue at his own suit, had the notes seized, and carried his bid at the second sale to the sum of *five dollars* only, and this sum to be paid at twelve months' credit; no one, however, having bid more, the notes were adjudicated to Copley, although he must have known at the time, that Faulk paid $915 cash for the same notes. However it may be, we cannot but express our regret and dissatisfaction, that the present suit should have been instituted by a member of the bar in his own name; but he may rest assured that such a transaction, which discloses a disposition to turn the laws of our country into a mere object and instrument of speculation, shall never receive any sanction at our hands.

*Judgment affirmed*