Hamlet, Bliss & Elliott vs. Fletcher, Wesenberg & Co.

---

## No. 8928.

### HAMLET, BLISS & ELLIOTT VS. FLETCHER, WESENBERG & CO.

In an action for damages where the causes of damage are set forth in such a manner as to enable the defendant to ascertain with reasonable certainty the grievances complained of and their nature, the suit should not be dismissed on an exception of vagueness in the allegations.

Where a party proceeds by attachment against another, when at the time he is indebted to the one proceeded against for a larger amount than he claims, and on trial a judgment is rendered against him for this balance and all costs, it cannot be held in a subsequent suit between the parties, that the attachment had been maintained.

APPEAL from the Civil District Court for the Parish of Orleans. Monroe, J.

B. R. Forman for Plaintiffs and Appellants.

Leovy & Kruttschnitt for Defendants and Appellees.

---

The opinion of the Court was delivered by

TODD, J. The plaintiffs are appellants from a judgment sustaining certain exceptions to their suit and dismissing the same.

The exceptions were, first to the vagueness of the petition or its allegations, and second, of res adjudicata as to part of the demand.

The suit was for damages for an alleged violation of a contract and for losses caused by the illegal suing out of an attachment.

The exception of vagueness relates to the first cause, and that of *res judicata* to the last.

1. The petition charges substantially:

That the plaintiffs were engaged in conducting a saw mill, and were dealers in lumber and general merchandise at McCalla, in the State of Alabama, with a moderate capital and good credit. That induced by the solicitations of the defendants, they left their homes and business at that place and removed to the parish of St. Tammany, in this State, and brought with them tools, and wagons, and hands at great expense, to construct a saw mill for the defendants on their lands in said parish, and to run the same. That the defendants obligated themselves to furnish materials, machinery, supplies and money for the construction and running of said mill and to sell to plaintiffs five acres of land adjoining the mill, at the net cost thereof, and grant them the exclusive privilege to cut timber from all their lands at one dollar per thousand feet.

That the defendants were the contractors for building a bridge across Lake Pontchartrain, for two millions of dollars, for the N. E. Railroad Company, and they bound themselves to take and pay for all the lumber plaintiffs could saw, while defendants were at work for said company, at a stipulated price.

That they, plaintiffs, had faithfully performed their part of the contract, built the mill, sawed and delivered lumber for defendants, exceeding $1758 85 and had ready for delivery 97,772 feet more and had done other work of value for them. That defendants violated their agreement by failing to furnish a boiler for the mill of sufficient power and to make the advances promised for the running expenses of the mill.

That, after plaintiffs had more than paid them for all their advances in lumber delivered, defendants with a view to break up their business and injure and harass them, maliciously sued out a writ of attachment against them for $1006 33, and caused to be seized thereunder 97,072 feet of lumber, 200 saw-logs, nine yoke of oxen, wagons, tools, implements, etc., etc.

That they were unable to bond the property seized, and it remained under seizure until the final trial of the cause, when a judgment was rendered in their (plaintiffs) favor, by the effect of which the attachment was dissolved and the property released.

That the attachment subjected them to heavy expenses in the cost of litigation, in the ruin of their business, in the destruction of their credit here and at their home in Alabama.

They estimate their damages for the violation of the contract and up to the issuing of the attachment at $100,000, and those resulting from the writ at $25,000.

We have gone thus extensively into the charges or allegations of the petition, with a view to judge of their character, and to ascertain whether they were sufficiently definite to afford the defendants an idea of the complaints made and grievances charged, to enable them to meet and answer them.

1. We cannot discover from the above review any difficulty on this score. The charges may, in the estimation of defendants, seem extravagant or even unfounded, but we do not think that they can be at any loss in discovering the grounds of complaint in the alleged causes of damage.

The law does not require that a distinct and separate amount or estimate of damage should be ascribed or imputed to each cause alleged; but all the charges may be assigned separately, and the total of the resultant damages lumped or given in the aggregate.

We do not, therefore, find the petition obnoxious to the charge of vagueness or obscurity, to such an extent at least, as to justify the action or ruling of the lower court, with respect to it. This part of the exception should have been overruled.

2. The exception of *res judicata* is based on the judgment rendered in the attachment suit referred to.

That suit was first instituted in the District Court of St. Tammany and was subsequently removed to the United States Circuit Court, and there decided.

As stated it was brought by the defendants in the instant case to recover of the plaintiffs herein $1006 33 for advances made them and also for $5000 damages. The plaintiffs—defendants in that suit— claimed in reconvention the price or value of lumber delivered and for work done, time, labor, etc., $4162 72, together with $100,000 damages for the same causes, substantially, that are alleged in this suit, as resulting from the violation of the contract as charged.

Before the trial of that case, on motion of the respective parties, these items of damages were withdrawn.

No damages were demanded in that suit as caused by the attachment, nor is it so claimed by the counsel of the defendants in this

case, but, as we understand the exception and their argument, it is contended that the judgment of the United States Circuit Court did not dissolve the attachment, but on the contrary, the verdict of the jury and the judgment rendered thereon in that case, construed together, maintained the attachment.

That, therefore, the validity of the attachment was a thing adjudged, and plaintiffs herein could not assert otherwise, or claim anything on account of its issuance and the proceeding under it.

As stated before, the trial in that case resulted in a judgment in favor of the defendants therein and plaintiffs in this suit for $752 53, with interest and costs, as will be seen by the terms of the final judgment, which is here reproduced as follows :

"This cause came on to be heard on the motion herein made by defendants and intervenor for a new trial, and was argued by counsel; on consideration whereof, the court refuses a new trial to the intervenor, and as to the defendants, the court orders that the judgment herein rendered on 3d June, 1882, be so modified as to read as follows :

"By reason of the findings and verdict of the jury herein entered on 3d June, 1882, it is ordered, adjudged and decreed that the defendants, Hamlet, Bliss and Elliott, do have and recover of and from the plaintiffs, Fletcher, Wesenberg & Co., and of John F. Fletcher, William Wesenberg and Thomas O'Connor, the individual members of said firm, *in solido*, the sum of seven hundred and fifty-two dollars and fifty-three cents, with five per cent per annum interest thereon from 28th April, 1882, till paid, and costs of suit.

"It is further ordered, adjudged and decreed that, on the intervention of Newton L. Wilson, there be judgment in favor of said Fletcher, Wesenberg & Co., and against the demand of the said intervenor, Newton L. Wilson, with costs of intervention."

It is difficult to understand how Fletcher, Wesenberg & Co., at a time when they were actually in debt to Hamlet, Bliss & Elliott, could legally sue out an attachment against their property and detain it under seizure for months. Yet they did it, according to this judgment which they invoke. It seems that common sense and common justice would alike declare that the writ under such circumstances was illegal and unwarranted.

The judgment itself virtually so declares, when by its terms it condemns the plaintiffs therein to pay the costs of the attachment—that is all costs—and also a balance found owing the defendants.

Nor is the force of these facts and this conclusion affected by the purely technical objection, that the verdict of the jury allowed, first; the claim of the plaintiffs, and secondly, the claim of the defendants set up in their answer for a larger amount, and the first allowed, was followed or accompanied by the words "with privilege on property attached." This finding or these words cannot with us outweigh the language and decretal part of the judgment, and its final and conclusive determination and adjudication of the rights of the respective parties at the commencement and end of that litigation.

As we construe the judgment, the attachment of Fletcher, Wesenberg & Co., against Hamlet, Bliss & Elliott, plaintiffs in the instant case, was not maintained, but was held and decided to have improperly and illegally issued.

The plea of *res adjudicata* was, therefore, incorrectly maintained.

It is, therefore, ordered, adjudged and decreed that the judgment of the lower court be annulled, avoided and reversed, and it is now ordered, adjudged and decreed that the case be remanded to the lower court to be proceeded with according to law, costs of appeal to be paid by the appellees, and of the lower court to await the final determination of the cause.