(41 South. 220.)

No. 15,743.

BARROW v. GRANT'S ESTATE et al.

(March 26, 1906. Rehearing Denied May 7, 1906.)

1. EVIDENCE—PAROL EVIDENCE—TITLE TO REALTY.

Where a mortgage is sought to be annulled on the ground that the mortgagor was not the owner of the mortgaged property, the issue involves the title of the mortgagor, and parol evidence is inadmissible.

2. SAME—FRAUD.

The fraud, whereof the allegation opens the door to the admission of parol evidence to affect title to real estate, is that kind of fraud which, in the nature of things, admits of no other kind of proof, as, for instance, the fraud that is the cause of error in contracts,

and the fraud by which a debtor puts his property beyond the reach of his creditors. The fraud by which a person buys real estate in his own name, instead of in that of his principal, is not provable by parol.

3. EXECUTORS AND ADMINISTRATORS—CLAIMS AGAINST DECEDENT.

For proving against the estate of a dead man a claim for a large sum of money said to have been confided to him and not accounted for, specific allegations and unsuspicious proof are required.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Fred Durieve King, Judge.

Action by H. G. Barrow against the estate of William M. Grant and others. Judgment for plaintiff, and defendants appeal. Amended and affirmed.

Henriques & Duchamp for appellant Sarah Louise Barrow. Ernest Touro Florance and Cunningham & Cunningham, for appellant administrator. William Stirling Parkerson, for appellee.

PROVOSTY, J. There are two demands in this case, one for the annulment of a mortgage, and the other for a moneyed judgment. We shall consider the former, and begin with a statement of the facts, and in doing so shall ignore entirely the parol evidence, which. is inadmissible in the case; the matter involved being title to real estate.

The deceased, William M. Grant, bought a house and lot from the People's Homestead Association in May, 1890. What the price was is not proved, but by the passbook of the association the fact appears that from the date of the purchase to May, 1900, he made monthly payments of, alternately, $40 and $45, amounting in all to $6,366.

On May 10, 1900, he made the last payment, and 15 days afterwards he mortgaged the property to secure a note of $1,200 executed by himself.

On the 23d of January, 1901, he and Miss Sarah Louise Barrow, the daughter of plaintiff, went before a notary and executed an act of sale by which he transferred the property to her at the price of $3,650, of which $650 cash and $3,000 in three installments payable in one, two, and three years, with 6 per cent. interest from date, secured by mortgage and vendor's privilege on the property. The act refers to the $1,200 mortgage as still existing on the property, and binds the vendor to hold the purchaser harmless against the same.

In April, 1902, 15 months after this sale, Grant died. This $3,000 mortgage was inventoried as an asset of his succession.

In May, 1902, the present plaintiff filed a suit in the name of his daughter, whom he alleged to be a minor, for the cancellation of this $3,000 mortgage, on the ground that Grant was never owner of the property; that he had been charged by Mrs. Barrow, plaintiff's wife, to buy it for her, and she had furnished him all the money that had gone in payment of it; but that he had fraudulently put it in his own name; that, when the fraud was discovered, he had agreed to rectify matters by transferring the property to Mrs. Barrow, but that instead of so doing he had fraudulently made the credit sale to Miss Barrow.

Defendant excepted that Miss Barrow was not a minor, and that, moreover, she had been of age when the transfer to her was made. Thereupon Miss Barrow filed a supplemental petition alleging that she was of age, and that the declaration of her being a minor had been through an error of counsel.

That case came to this court, and was dismissed on the ground that Miss Barrow was estopped from contesting the recitals of the authentic act freely signed by her.

Thereupon the present suit was filed, in which the same contention is made that Grant fraudulently put the property in his own name, when in reality it was bought and paid for by Mrs. Barrow. Miss Barrow, now Mrs. Wood, is made a party defendant as also the recorder of mortgages, and the administrator of the succession of Grant,

and the prayer is that the house and lot be decreed to belong to the community of acquets and gains existing between plaintiff and his wife, and that the mortgage be annulled and be ordered to be erased from the records.

A good deal of parol evidence was offered, but was duly objected to, and should have been excluded. The validity of the mortgage depends solely upon whether Grant was or not the owner of the property, and the parol evidence was offered to show that he was not the owner; and hence it was offered to affect title to real estate.

The learned counsel for plaintiff argues that the allegation of fraud opens the door to the parol evidence; and he cites in support of that contention the case of Le Bleu v. Savoie, 109 La. 680, 33 South. 729.

That was a case where the defendant had alleged that "by an error of the notary, superinduced by the fraud and ill practices of the defendant, the notarial act was not made to embody the real agreement of the parties." The kind of fraud that causes error may always be shown, and, if the only evidence available for the purpose is parol evidence, such evidence is admissible, even though title to real estate be involved. If it were otherwise, the courts of justice could be made to lend their aid to the enforcement of so-called contracts to which the consent of the defendant had been given in error. In such cases the parol evidence is admitted ex necessitate. Broussard v. Sudrique, 4 La. 347; Palangue v. Guesnon, 15 La. 311; also, Succession of Goodrich, 6 Rob. 109; Blanchard v. Gloyd, 7 Rob. 548; Robert v. Boulat, 9 La. Ann. 30; Wurzburger v. Meric, 20 La. Ann. 416; Fleming v. Scott, 26 La. Ann. 548; Hackenberg v. Gartskamp, 30 La. Ann. 902; Levy v. Ward, 33 La. Ann. 1035; Vignie v. Brady, 35 La. Ann. 561; Armstrong v. Armstrong, 36 La. Ann. 551; Dickson v. Ford, 38 La. Ann. 740; Ker v. Evershed, 41 La. Ann. 25, 6 South. 566; Bryan v. Wisner,

44 La. Ann. 840, 11 South. 290; Gladdish v. Godchaux, 46 La. Ann. 1575, 16 South. 451; Landry v. Laplos, 113 La. 697, 37 South. 606. But parol evidence is not admissible to show that in a sale of real estate the vendee named in the act was not the real vendee, but that another person was. McKenzie v. Bacon, 40 La. Ann. 157, 4 South. 65; Perrault v. Perrault, 32 La. Ann. 635; Hackenberg v. Gartskamp, 30 La. Ann. 898; Heirs of Dohan v. Dohan, 42 La. Ann. 449, 7 South. 569; Tille v. Taylor, 42 La. Ann. 1105, 8 South. 399; Stierle v. Kaiser, 45 La. Ann. 580, 12 South. 839; Whelage v. Lotz, 44 La. Ann. 600, 10 South. 933. It cannot be done even when the suit is by a creditor seeking to uncover the property of his debtor. Hoffman v. Ackermann, 110 La. 1070, 35 South. 293. Here the plaintiff is not seeking to show that he has consented to something as the result of an error induced by the fraud of defendant, but he is seeking to show that the recitals of the act by which the homestead association made the sale to Grant are not true. If after a man is dead the purchases of real estate made by him may be shown by parol to have been made for some other person, what safety is there in titles?

But plaintiff contends that there is sufficient written evidence in the record to show that the property was bought for Mrs. Barrow and was hers. That evidence consists of the following:

"T. D. Office, 4th.

"My dear 'Mite':

"I have just received a communication from the 'Kid', in which she says that you and she have had a conversation as to possession of 4504, she to be nominal and you to be actual owner of the place—on the understanding that it is to be a home for you both, and that you will jointly inhabit in the future as you have done in the past.

"I hesitate only to signify my approval of this arrangement, until I know that it is perfectly agreeable to you; for, while I do not in the lease doubt the accuracy of the 'Kid's' statement that the agreement pleases you, I would like you to say so yourself, because in a recent somewhat vague letter from you I read the words: 'I do not see why you should donate

your place to Louise; if forced by necessity. I would certainly prefer to live from your bounty than from Louise's.'

"You will, my dear 'Mite,' perhaps have the goodness, under the circumstances, to let me know explicitly whether you prefer to go on occupying the place as a home, without disturbance or interference, from me, or whether you should prefer that I should deed it to the 'Kid'—to be equally a home for you. You will no doubt observe that, in either case, your comfort is the object aimed at, and you must be pleased to understand that never at any moment has the 'bounty' idea entered, or is it likely to enter my mind.

"Please, therefore, my dear 'Mite,' to indicate clearly whether you approve the contemplated arrangement to turn over the place to the 'Kid' to be your and her home, or what it is that you would like. I am, with love,
　　　　　Yours　　　　　[Signed] W."

"T. D. Office, 2:30 p. m., Friday, 30th.

"My dear Madam:

"Your note to hand. It will be impossible for me, as far as I see at present, to do what you want me to do in regard to the repayment of my pecuniary indebtedness to you. Not wishing, however, to stand in your way when you have a good thing in prospect, I shall immediately put myself in communication with the homestead association for the surrender of the property, 1124 Camp street. I may get the amount which I owe you, and for which you are quite entitled to dun me, by that surrender; but I do not have any hope that the transaction could be transacted inside of the two weeks that you allow me in which to repay. That is all I can say in the meantime; and, with the assurance that you may rely upon it that you will not lose a cent of your money through me, I beg to subscribe myself,

"Very truly yours, [Signed] W. M. Grant.

"A meeting of the homestead association can not be had until next week.
　　　　　　　　　　　　　"[Signed] G."

"New Orleans, Monday Aftn., Sept. 5, 1892.

"I am writing here amid much noise the temporary 'good bye' which I was unable to tell you at the house. I shall go out of New Orleans in search of that few days absolute repose which is necessary to my deriving any advantage from my short holiday, and which, though I expected to find it at 1124 Camp, I failed, as you are aware, to find. I have not yet made up my mind altogether where I shall go; but one thing is certain, that, until Monday next, at least, I shall not put in an appearance at your house to be in your way.

"Until then, I am, as N. M. H. would put it.
"Your friend,　　[Signed] W. M. Grant."

There is, in addition, a visiting card of Mr. W. M. Grant, with the following upon it in manuscript:

"Mr. Laumann will look over your fences and make estimate."

But this is not shown to be in the handwriting of Grant.

It is hardly necessary to say that these writings vary far from showing that Grant admitted this property did not belong to him —show the very opposite, and in no uncertain manner. Perhaps a different interpretation might be placed upon them, if they were read in connection with the parol evidence, and with the letters testified to by plaintiff's wife and daughter as having been written by them to Grant; but those letters amount to nothing more than parol evidence, since they emanate from the witnesses themselves and are produced by them. They and the parol evidence are not evidence in the case and cannot be considered. On a question of title to real estate, written evidence cannot be eked out by parol. Wright v. Elms, 106 La. 150, 30 South. 311.

We pass to the second demand. It is set forth in the petition in the following words:

"Petitioner further represents that his wife gave the said W. M. Grant money, which she had saved, with which she proposed buying property at Covington, Louisiana; and that the item inventoried as 'Cash in Bank $428.90,' was a part of that amount."

The prayer is:

"And that he do have and recover judgment for the item on the inventory 'Cash in Bank $428.90.'"

It is not so clear, under this allegation and prayer, that the suit is not for specific property, and that it must not fail upon the evidence which shows that the particular $428.-90 in question was Grant's own money.

But conceding that the suit is simply for the return of money placed in the hands of Grant and never returned, the suit must fail for the reason that the money which plaintiff's wife testifies she confided to Grant is not shown to have been community property, but may have been the paraphernal property of the wife.

No more in the testimony than in the allegation is there any specification of time and

place, and this vagueness in the putting forward of a claim against the estate of a dead man is almost of itself fatal.

Again, the claim was brought forward only after the first suit had failed.

In support of the demand, plaintiff produces his wife, who testified as follows:

"I gave him $800 to put in bank for me. He put it in his own name."

She further testified that when Grant was taken sick of the illness of which he died she tried to see him, but that he refused to see her. "I had written," she says, "four letters to him begging an interview with him because I wanted to see him about money I had given him to put in bank for me, and I could get no communication from him. I had tried friends, and finally I sent a boy down with a note and I got that in reply."

The reply the witness has reference to is the following note:

"I can scarcely imagine how you could be worrying me at this time while I have been ill. It certainly is a peculiar way of showing affection. For God's sake let me alone until I get better. I shall be up at the place, but inquire as you may, but please save me further letters."

Plaintiff produced in addition a man who testified that he went to Mr. Grant's sick room with a note from Mrs. Barrow, and that as he was leaving the room Mr. Grant asked him to make a memorandum in his book, and that thereupon he, under the direction of Mr. Grant, made the following memorandum:

"March 26th Mr. Grant says remember that if I should die the place that Mrs. Barrow resides at belongs to her. She gave me the money to purchase the place.

"I have money in bank in my name which belongs to her. She gave it to me to buy property at Covington."

The witness further testified that he showed the memorandum to his mother the next morning, and that the memorandum book had been in his pocket ever since.

The mother of this witness testified that the son had given her the book the next morning, and that, deeming it to be a sort of

testament, she had kept it preciously in her armoir, except that one time she had told her son to show it to Mrs. Barrow, and that he had done so and returned it to her.

The only other evidence produced by plaintiff in support of this demand is a letter written to her by a lawyer in connection with her proposal to buy a certain piece of property for $800. This letter is dated May 13, 1901.

The testimony of plaintiff's wife, even conceding that she could be permitted to testify at all in the matter, is entirely too vague to support a claim against the estate of a dead man. Her statement is highly improbable, for, if she gave the money before she had made the alleged discovery of Grant's dishonesty and duplicity in the matter of the house and lot, it would be strange that in the 12 months that Grant lived thereafter she should not have gotten it back; and she does not even say that she demanded it, except that she says that she wrote to Grant about the matter when he was on his deathbed. On the other hand, if she gave the money after the alleged discovery of Grant's dishonesty and duplicity, it is passing strange that she should have had recourse to him for depositing the money in bank for her, when she could so easily have deposited it herself, or through her daughter or her husband.

The testimony of the memorandum man is contradicted by that of his mother, and, moreover, it appears next to incredible to us, that, if Grant had had this matter on his mind, he would not have referred to it in his note to Mrs. Barrow, or would have had recourse to this stranger instead of to the friends who were at his bedside.

The fact is that, after reading what the daily associates of Mr. Grant for a long number of years have had to say of his character and sense of honor, it is simply impossible for the court to believe the story of plaintiff. It would be hard to believe it, even if set

down in black and white in Grant's own handwriting and over his signature. For such a thing to be, Grant would have had to be a Dr. Jekyll and Mr. Hyde sort of man.

The judgment appealed from is amended so as to dismiss the suit of plaintiff at plaintiff's costs as against the succession of Grant and the recorder of mortgages, and is otherwise affirmed; plaintiff to pay costs of appeal.