JACKSON et al. v. DOMINICK et al.*

No. 5228.

Court of Appeal of Louisiana. Second Circuit.

April 3, 1936.

John B. Files, of Shreveport, and King, McHaffey & Wheeler, of Texarkana, Tex., for appellants.

D. H. Perkins, of Shreveport, for appellees.

DREW, Judge.

Plaintiffs instituted the following suit:

"The petition of Layman B. Brown, a resident of Miller County, Arkansas, Edward L. Berry, a resident of Bowie County, Texas, Ed. Jackson, a resident of Cass County, Texas, and Jesse Jackson, a resident of Miller County, Arkansas, Gazzie Jackson, Josephine Jackson Watson, wife of Roy Watson, herein joined and authorized by her said husband, Army Jackson, Hosea Jackson, Bolley Jackson and Lettie Jackson Honeycutt, wife of Arthur Honeycutt, herein joined and authorized by her said husband, residents of Caddo Parish, Louisiana, with respect represents:

"1. That Grace Ann Jackson and Ned Jackson were lawfully married and resided for a number of years in your said Parish and state; that on March 31, 1925, Grace Ann Jackson died, and on October 15, 1933, Ned Jackson died, leaving the following children and heirs at law: Ed Jackson, Jesse Jackson, Gazzie Jackson, Josephine Jackson Watson, Army Jackson, Hosea Jackson, Bolley Jackson and Lettie Jackson Honeycutt.

"2. That on September 24, 1935, the above named children and heirs at law of Grace Ann Jackson and Ned Jackson

*Rehearing denied April 30, 1936.

were duly recognized as the children and heirs at law by judgment of this court in proceedings No. 67,247, entitled Successions of Ned Jackson and Grace Ann Jackson, and ordering said persons to be recognized as the sole heirs and put in possession of the following described property, to-wit: NW¼ of NW¼ and West Half of the West Half of the Northeast Quarter (W½ of W½ of NE¼) Section 19, Township 23, Range 15, Caddo Parish, Louisiana; which proceedings are hereto annexed and made part hereof by reference.

"3. Petitioners further represent that the said Gazzie Jackson, Ed. Jackson, Jesse Jackson, Josephine Jackson Watson, Army Jackson, Hosea Jackson, Bolley Jackson and Lettie Jackson Honeycutt, petitioners herein, transferred, conveyed and assigned unto Layman B. Brown and Edward L. Berry, also petitioners herein, an undivided one-half interest in and to the above described property inherited from their mother, Grace Ann Jackson, and their father, Ned Jackson, as per act recorded in Conveyance Book ――――, page ――――, of the Recorder's Office of Caddo Parish, Louisiana, annexed hereto and made part hereof by reference.

"4. Petitioners further represent that the said property was acquired by Ned Jackson during his marriage with Grace Ann Jackson and immediately upon the purchase of same went into the physical possession thereof during the year 1926, lived upon and farmed same, and has continued in the open, notorious possession thereof as owner since that date, under the terms, conditions and stipulations hereinafter set forth.

"5. Petitioners further represent that the above described property was purchased by Frank Tatum, a resident of Texarkana, Arkansas, from W. B. Spearman on May 11, 1889, recorded in Conveyance Book 7, page 337, to which special reference is made, under the following description:

"Northeast Quarter of Northeast Quarter (NE¼ of NE¼) and North one fourth of the Southeast Quarter of Northeast Quarter (N¼ of SE¼ of NE¼), Section 19, Township 23, Range 15.

"6. Petitioners further aver that said description of the property is erroneous and on February 24, 1908, W. B. Spearman and Frank Tatum prepared and executed what purported to be a deed of correction, as per act recorded in Convey-

ance Book 47, page 446, in which the property was described as follows:

"Northwest Quarter of the Northeast Quarter (NW¼ of NE¼) and ten acres, being the North one-fourth of the Southwest Quarter of the Northwest Quarter (N¼ of the SW¼ of NW¼) of Section 19, Township 23, Range 15.

"7. Petitioners further represent that said correction deed was erroneous and that on April 30, 1910, the said W. B. Spearman and Frank Tatum executed a second correction deed, recorded in Book 59, p. 389, in which the property was correctly described as follows, to-wit:

"Northwest Quarter of the Northwest Quarter, (NW¼ of NW¼) and ten acres, being the West one-fourth of the Northeast Quarter of the Northwest Quarter (W¼ of the NE¼ of NW¼) Section 19, Township 23 North, Range 15 West, Caddo Parish, Louisiana.

"8. Petitioners further represent that the said Frank Tatum and the said Ned Jackson, father of some of your petitioners, were intimate friends, closely connected by social and religious ties, and had for many years belonged to the same fraternal orders and constantly addressed each other in the intimate and endearing term of 'brother.'

"9. Subsequent to the acquisition of said property and occupancy of same for a number of years Frank Tatum moved to Texarkana, Arkansas, where he resided continuously until he died recently; that while he was residing in Texarkana, the said Ned Jackson who had been for a number of years a neighbor of the said Tatum, residing on lands of W. B. Spearman in Section 18 immediately north and contiguous to the land of the said Tatum, requested his son, Gazzie Jackson, to write a letter for him and in his name to the said Tatum asking said Tatum whether or not he desired to again live upon the property above described and if not would he sell it to him for a home, all of which is shown by said letter attached hereto and made part hereof and marked Exhibit 'A.'

"10. Petitioners aver that in response to said letter and subsequent negotiations said Frank Tatum advised Ned Jackson he did not desire to again live ·upon said property and during the fall of 1926, agreed to sell the same to Ned Jackson for the consideration of $350.00, a sum much be-

low the actual value of said property, so that the said Ned Jackson could own his own home; that under this arrangement the said Ned Jackson took actual physical possession of the property and moved upon the same during the fall of 1926, with the understanding that the sum of $350.00 would be paid in cash the following fall, at which time a deed would be duly executed; that the said Jackson continued in physical possession of said property until the time of his death, since which time same has been occupied by his heirs, some of your petitioners.

"11. That during the fall of 1927, the said Ned Jackson being unable to pay in cash the sum of $350.00, it was agreed between the said Ned Jackson and Frank Tatum that an extension of 12 months should be made and the said Ned Jackson continued in the actual, physical possession of the property with the understanding and agreement, however, that the $350.00 should be paid in cash during the fall of 1928, and upon the payment of said amount in cash, the said Tatum would execute a transfer of said property by proper instrument.

"12. That the said Jackson, seeing that he would be unable to make the cash payment in the fall of 1928, went to see J. H. Dominick, a merchant living at Mira, Louisiana, for the purpose of borrowing $350.00 with which to pay for said property; that the said Dominick was a long time friend and merchant of Ned Jackson, with whom he had traded and borrowed money on numerous occasions prior to this time; that the said Dominick agreed to loan the said Ned Jackson the sum of $350.00 with which to buy the property and charged a nominal sum for his services in connection with said loan, to-wit, the sum of $15.00, and at the request of said Ned Jackson, the said J. H. Dominick on December 1, 1928, wrote a letter to Frank Tatum, owner of the land, at Texarkana, Arkansas, stating that Ned Jackson had made arrangements with him for the purchase of said land and to pay the $350.00, plus his charges, or $365.00, all of which is more clearly shown by said letter of J. H. Dominick to Frank Tatum, annexed hereto and made part hereof and marked Exhibit 'B.'

"13. Petitioners further represent that in a few days thereafter, in response to said letter, said Frank Tatum came to your petitioners' house on the land in controversy and together on the 18th day of December, 1928, they went to see J. H. Dominick at Mira, Louisiana, to secure the $350.00 in cash and to have the deed properly executed by Frank Tatum conveying the property to the said Ned Jackson.

"14. That an instrument had been prepared by said J. H. Dominick which was presented by him to the said Frank Tatum, who executed same on the statement and representation of said J. H. Dominick that same was a transfer and assignment of the property to Ned Jackson, and that at the same time said Ned Jackson executed his note for the amount of the loan, payable in five years; that the said Tatum and Jackson were unable to read or write and relied upon the said J. H. Dominick as to the contents of said instrument.

"15. Petitioners further represent that the said Ned Jackson made annual payments on the said note thereafter to the said J. H. Dominick up to the time of his death in 1933, which was accepted by the said J. H. Dominick as payment of the sum so loaned by him for the purchase of said property.

"16. Petitioners further represent that Gazzie Jackson, the son of Ned Jackson and one of your petitioners, at the request of his father in the fall of 1929, went to Atlanta, Texas, to see Mr. N. S. Spearman, a merchant of that city with whom the said Gazzie Jackson had been trading and buying his supplies for a number of years, to borrow a sum sufficient to pay whatever balance may have been due the said Dominick on the said note given by the said Ned Jackson to secure the loan made by the said Dominick to him for the purchase of said property; and that the said Spearman called Mr. J. H. Dominick over the telephone at Mira, Louisiana, stating that he was ready to advance Ned Jackson sufficient money to pay the balance due on said note, but the said J. H. Dominick refused to permit the said Spearman to take up said note stating that he did not need his money and would carry Ned Jackson as long as he desired.

"17. Petitioners further represent that subsequent to the death of Ned Jackson, they had the conveyance records of Caddo Parish, Louisiana, examined and found that said instrument so prepared and executed by Frank Tatum to J. H. Dominick was in the form of a deed whereby the

870

property was transferred from Frank Tatum to J. H. Dominick, December 18, 1928, for a consideration of $365.00, and by a deed of correction on the 1st of February, 1929, covering the above described land for the consideration of $350.00, the true consideration, all of which is shown by said instruments, copies of which are hereto attached and marked Exhibits 'C' and 'D,' for the purpose of showing rem ipsam.

"18. That the alleged deed and correction deed from Frank Tatum to J. H. Dominick, as above stated, were executed in error on the part of said Frank Tatum, superinduced by the misstatements and representations of J. H. Dominick that it was a transfer of the property from said Tatum to Ned Jackson, and that he, Dominick, retained same as a pledge or mortgage for the security of the $350.00 he advanced to Ned Jackson with which to pay for said land; that at that time the said Frank Tatum stated that he would not sell said land to J. H. Dominick or anyone else for the price of $350.00, but would sell it only to Ned Jackson as he was an old friend and associate and he wanted him to have a home; that the said Dominick stated he did not want to buy the property as. he had too much land already and was simply loaning Ned Jackson the money with which to buy the property.

"19. Petitioners aver that the said Frank Tatum was an aged negro who could neither read nor write and had no intention of selling said property to J. H. Dominick for $350.00, a sum far below the real value, and that he sold it to Ned Jackson for that price so that the said Ned Jackson could have a home by reason of their close relations and association for a long number of years; that the said instruments were signed by the said Tatum upon statements of said J. H. Dominick and believing same to be true, that it was a transfer of the property to Ned Jackson, and that the said Jackson executed his note under the belief and under the statements made by J. H. Dominick that same was for money advanced by him to the said Jackson for the sole and only purpose of purchasing said land and that the title was vested in Ned Jackson and he retained a mortgage on same for the amount loaned.

"20. That the said instruments were signed through error and mistake, superinduced by the misrepresentations and misstatements of the said J. H. Dominick, the said Frank Tatum and Ned Jackson being ignorant negroes, unable to read and write and having great confidence in the said J. H. Dominick who was their merchant and adviser for a number of years; that the said Frank Tatum and Ned Jackson had no intention of having the property transferred to said J. H. Dominick, but only to give him a mortgage securing the money loaned to said Ned Jackson.

"21. That the said J. H. Dominick died in this Parish on November 16, 1934, leaving a last will and testament which was duly probated in proceedings No. 65,377, entitled 'Succession of J. H. Dominick', whereby certain properties were disposed of by special legacies, not including the property herein described, and that all other property owned by said J. H. Dominick or standing in his name was willed to residuary legatees as · follows, to-wit: A. C. Dominick, Jr., Isabelle Dominick Smith, Jack Dominick and Paul Dominick, in the proportion of one-fourth each, all of said parties being residents of Caddo Parish, Louisiana, in whom all rights and interest of the said J. H. Dominick were transferred and conveyed.

"22. Petitioners further represent that the alleged transfer from Frank Tatum to J. H. Dominick, dated December 18, 1928, and correction deed dated February 1, 1929, were executed through error on the part of Frank Tatum and Ned Jackson, superinduced by fraudulent statements of said J. H. Dominick that said instruments conveyed the title to Ned Jackson and granted a mortgage to the said J. H. Dominick for the sum of $350.00, the amount of money loaned, and relying upon said representations, the said Frank Tatum signed said instrument and the said Ned Jackson executed his promissory note to secure said loan and on which note the said J. H. Dominick received payments of interest and principal up until the time of his death in 1934.

"23. Petitioners aver that the said instruments above referred to should be set aside and annulled insofar as they purpose to transfer and assign the property from Frank Tatum to J. H. Dominick and that they should be declared an act of mortgage or security to secure the sum advanced by the said J. H. Dominick, which amount your petitioners are informed and believe does not exceed the sum of $75.00 balance due.

"24. Petitioners further aver in the alternative that if the court holds the said instruments in the form of deeds from Frank Tatum to J. H. Dominick were not instruments of mortgage or pledge, as being executed through error, fraud, misrepresentation as hereinabove alleged, then petitioners aver that the said Dominick was not vested with the title to said property, but was acting as the agent or trustee for Ned Jackson in acquiring same; that the petitioners, the heirs and assigns of said Ned Jackson, should be recognized as the true and lawful owners of said property and that their possession of same should be quieted, subject to any amount they may be due the estate of J. H. Dominick, or his heirs, on the sum advanced by J. H. Dominick, for Ned Jackson to Frank Tatum for the purchase of said property.

"25. Petitioners further aver that A. C. Dominick, Jr., Isabelle Dominick Smith, Jack Dominick and Paul Dominick, all residents of Caddo Parish, Louisiana, and residuary legatees under the last will and testament of J. H. Dominick, deceased, as hereinabove alleged, are claiming to own said property in the proportion of one-fourth each and refuse to recognize the right, title and interest of your petitioners, although amicable demand has been made in vain.

"26. That the alleged vendor of said deed died intestate, without father or mother, or other ascendants and without descendants, but some time before his death was remarried to Beatrice Oliver Tatum, a resident of the State of Arkansas, who would be his only heir and representative and should be made a party to this proceeding.

"Wherefore, premises considered, petitioners pray that a curator ad hoc be appointed to represent Beatrice Oliver Tatum, non-resident, upon whom service and citation may be made; for service and citation upon A. C. Dominick, Jr., Isabelle Dominick Smith, Jack Dominick and Paul Dominick, residents of Caddo Parish, Louisiana, to appear and answer hereto, and after legal delays and proceedings had, there be judgment in favor of petitioners decreeing the said instrument from Frank Tatum to J. H. Dominick one of mortgage or security to said J. H. Dominick and vesting the title in Ned Jackson; that petitioners be recognized as the owners and entitled to possession of the land hereinabove described; and, in the alternative, that the alleged deed, if it be not held to be an act to secure a mortgage, vesting the title in Ned Jackson and giving security to said J. H. Dominick, that it be decreed that said J. H. Dominick was acting as the agent and trustee of said Ned Jackson, whereby the title was vested in the said Ned Jackson, his heirs, successors and assigns.

"Petitioners pray in the further alternative, that the verbal sale from Frank Tatum to Ned Jackson, under which act delivery of the property was made, be recognized and enforced and said Ned Jackson, his heirs, successors and assigns be recognized as the owners of said property by virtue of said sale.

"Further prays for all necessary orders, costs and general relief, such as plaintiffs may be entitled to upon trial hereof."

To the petition they attached the two following letters:

"Rodessa, La.,
"Aug. 22, 1924.
"Mr. F. T. Tatum, Texarkana, Ark.

"Dear Brother: Today why (while) thinking of you today. This is to say. I and family is getting along very well and I hope you are likewise and also your family.

"Listen bro. I am asking you again because it seems to me you ant gont (are not going) to make this your home any more. Will you sell me your place. That if you are not gont (going) to come back to live I would like very well to bye it as I ant (ain't) got any home and farming is what I follow. So you write and tell me what you are gont to do. If you wont sell it I will list (lease) it are rent it.

"So ans. this letter so I will come up there and make the trade.

"I would have made purty fair crop if we had got a rain in the month of July. So now probley I will get 40% of a crop. So this is all. So write and let me no what to do. I am looking for a ans. in short.

"Yours very truly,
"N. J. Jackson."
"Mira, Louisiana
"12/1/28.
"Frank Tatum, Texarkana, Ark.

"Dear Sir: Ned Jackson is here and he is making arrangements to buy your place, consisting of 52 acres of land in Caddo Parish, and is adjoining the Spearman land. He says you bought the land from Mr. W. B. Spearman, and that you

will sell for $365.00 cash. Now if you and Ned agree to trade, please advise to this effect so I may proceed to have the title examined, and if the title is found O. K., you may rest assured Ned will take the place. I am writing you so you will have something to depend upon.

"Send your address so if it is necessary, I can write you. I will send the deed and check to lawyer Head so you can go to his office and sign and get pay for the land.

"I have delt with Ned and find him a man of his word. If this agreement is all right, please write me to this effect.

"Very truly yours,

"J. H. Dominick.

"P. S. I think we can get the papers fixed in the next few days."

And, for the purpose of showing rem ipsam, attached a deed, of date December 18, 1928, from Frank Tatum to J. H. Dominick, and a correction deed from Tatum to Dominick on February 1, 1929, covering the property involved in this suit.

In answer to this petition, defendants filed an exception of no cause and no right of action, which was sustained by the lower court; and plaintiffs have prosecuted this appeal.

We will dispose of plaintiffs' claims in reverse order, and first take up the alternative demand, which is that J. H. Dominick be declared to be the agent and trustee of Ned Jackson, whereby title was vested in Ned Jackson when Dominick took title in his own name.

Where the petition admits that the agreement to buy real estate was oral and not written, and where parol evidence is necessary to establish title, it being inadmissible, an exception of no cause of action is properly sustained, under article 2440 of the Revised Civil Code. Frederick v. Vautrain, 6 La.App. 565.

There is no written evidence that Dominick was the agent or trustee of Ned Jackson in purchasing the said land, and to establish this fact parol evidence would have to be admitted, which is prohibited by law. Stierle v. Kaiser, 45 La.Ann. 580, 12 So. 839; Hanby v. Texas Company, 140 La. 189, 72 So. 933; Perrault v. Perrault, 32 La.Ann. 635, citing numerous cases thereunder.

In this last-cited case the court held that, under the law of Louisiana, forbidding the establishing of title to real estate by parol evidence finds no exception in the case of a fraudulent violation of an alleged parol mandate to buy.

The alternative demand is therefore without merit.

Plaintiffs' contention in the original demand is that the property was really in truth purchased by Ned Jackson and, through fraud and error, the deed was made to Dominick. Unless there is sufficient written evidence to establish this fact, it cannot be established, for the reason that parol evidence is inadmissible to create a title to real estate (Revised Civil Code, art. 2440); and parol testimony is not admissible to show that in a sale of real estate the vendee named in the act was not the real vendee, but that another person was. McKenzie v. Bacon, 40 La. Ann. 157, 4 So. 65; Barrow v. Grant's Estate, 116 La. 952, 41 So. 220, 221.

The last-cited case fits the one at bar like a glove. We quote from the opinion as follows:

"A good deal of parol evidence was offered, but was duly objected to, and should have been excluded. The validity of the mortgage depends solely upon whether Grant was or not the owner of the property, and the parol evidence was offered to show that he was not the owner; and hence it was offered to affect title to real estate.

"The learned counsel for plaintiff argues that the allegation of fraud opens the door to the parol evidence; and he cites in support of that contention the case of Le Bleu v. Savoie, 109 La. 680, 33 So. 729.

"That was a case where the defendant had alleged that 'by an error of the notary, superinduced by the fraud and ill practices of the defendant, the notarial act was not made to embody the real agreement of the parties.' The kind of fraud that causes error may always be shown, and, if the only evidence available for the purpose is parol evidence, such evidence is admissible, even though title to real estate be involved. If it were otherwise, the courts of justice could be made to lend their aid to the enforcement of so-called contracts to which the consent of the defendant had been given in error. In such cases the parol evidence is admitted ex necessitate. Broussard v. Sudrique, 4 La. 347; Palangue v. Guesnon, 15 La. 311; also, Succession of Goodrich, 6 Rob.

[107] 109; Blanchard v. Gloyd, 7 Rob. [542] 548; Robert v. Boulat, 9 La.Ann. [29] 30; Wurzburger v. Meric, 20 La.Ann. [415] 416; Fleming v. Scott, 26 La.Ann. [545] 548; Hackenburg v. Gartskamp, 30 La.Ann. [898] 902; Levy v. Ward, 33 La. Ann. [1033] 1035; Vignie v. Brady, 35 La.Ann. [560] 561; Armstrong v. Armstrong, 36 La.Ann. [549] 551; Dickson v. Ford, 38 La.Ann. [736] 740; Ker v. Evershed, 41 La.Ann. [15] 25, 6 So. 566; Bryan v. Wisner, 44 La.Ann. [832] 840, 11 So. 290; Gladdish v. Godchaux, 46 La.Ann. [1571] 1575, 16 So. 451; Landry v. Laplos, 113 La. 697, 37 So. 606.

"But parol evidence is not admissible to show that in a sale of real estate the vendee named in the act was not the real vendee, but that another person was. McKenzie v. Bacon, 40 La.Ann. 157, 4 So. 65; Perrault v. Perrault, 32 La.Ann. 635; Hackenburg v. Gartskamp, 30 La.Ann. 898; Heirs of Dohan v. Dohan, 42 La. Ann. 449, 7 So. 569; Telle v. Taylor, 42 La.Ann. 1165, 8 So. 399; Stierle v. Kaiser, 45 La.Ann. 580, 12 So. 839; Whelage v. Lotz, 44 La.Ann. 600, 10 So. 933.

"It cannot be done even when the suit is by a creditor seeking to uncover the property of his debtor. Hoffmann v. Ackermann, 110 La. 1070, 35 So. 293. Here the plaintiff is not seeking to show that he has consented to something as the result of an error induced by the fraud of defendant, but he is seeking to show that the recitals of the act by which the homestead association made the sale to Grant are not true. If after a man is dead the purchases of real estate made by him may be shown by parol to have been made for some other person, what safety is there in titles?"

However, plaintiffs contend there is sufficient written evidence to justify the admission of parol evidence to eke out their title. In other words, they contend that the written evidence in the record is "beginning of proof." The written evidence in the record furnished by plaintiffs falls far short of the proof necessary for the establishment of a sale from Tatum to Ned Jackson.

In the case of Wright-Blodgett Company, Ltd., v. Elms, 106 La. 150, 30 So. 311, 315, the court said:

"The proof furnished did not advance far enough for that purpose in the direction of written proof, and the plaintiff was not authorized to eke out insufficient legal evidence by parol evidence, on the ground of some 'beginning of proof.'

"In the case of Patterson v. Bloss, 4 La. [374] 378, 23 Am.Dec. 486, 488, this court, referring to this subject, said:

"'The introduction of parol evidence has, however, been attempted to be claimed on the ground of some beginning of proof. Whatever may have been the law in regard to the faculty of introducing parol evidence after offering a beginning of proof in writing, our present codes are absolutely silent in this regard, and the former part of our jurisprudence must share the fate of the legal provisions existing before the new codes of which they make no mention.'"

The only legal written evidence in the record is a letter written by Mr. Dominick to Tatum on December 1, 1928, and certainly this does not make out title in Ned Jackson, for no transfer of the property was made until eighteen days later, and then Dominick was made the vendee. The letter in the record written by Ned Jackson's son, at his request, to Tatum in 1924, is not legal evidence. It amounts to nothing more than parol. Barrow v. Grant's Estate, supra.

However, if we should consider it as legal evidence, it adds nothing toward making out a title in Ned Jackson. It is nothing more than an offer to purchase the property in question.

Just what transpired between the time Dominick wrote to Tatum and the date of the deed to Dominick is not shown by any written evidence. What trade or transaction, if any, took place between Dominick, Tatum, and Ned Jackson at the time the deed was made out can only be shown by parol. The letter does not make out a title in Ned Jackson, and, in order to make out a title in him, parol testimony, which is prohibited, would have to be resorted to. It would truly be destroying title in Dominick and creating title in Ned Jackson by parol testimony, and it cannot be done under the law.

Our appreciation of the law in this state is that written evidence alone must be sufficient to make out title without the aid of any parol testimony; and, where the written evidence is not sufficient, it cannot be added to by parol testimony in order to eke out a title. Allegations of fraud and error do not in any manner

change the rule as to inadmissibility of parol testimony to establish title to real estate.

 The exception of no cause and no right of action was correctly sustained, and the judgment of the lower court is affirmed, with costs.