(35 South. 293.)

No. 14,514.

HOFFMANN v. ACKERMANN et al.

(May 25, 1903.)

FRAUDULENT CONVEYANCE — DECLARATION DE SIMULATION—PARTIES—PAROL EVIDENCE —SUPREME COURT—JURISDICTION.

1. The case as presented by the petition was that a judgment debtor bought immovable property through an interposed person in whose name title was taken in order to screen and cover it from the pursuit of the judgment creditor. The vendor of the property was not a party to the scheme to defraud the creditor and sold in good faith, believing the interposed person the real purchaser. The sale itself is not attacked—the only object of the suit being to have it decreed that the judgment debtor is the true owner and not the person whose name was used. *Held*, not necessary to make the vendor a party defendant.

2. The action is one in declaration of simulation, not to annul the sale, but to expose the real vendee. The simulation is not in *the title* conveyed, but in *the name* used as vendee.

3. Where one buys a piece of property, and, in order to elude his creditors, causes the title to be inscribed in the name of another, that part of the transaction relating to the name used is a simulation, and to expose the mask and uncover the true owner may well be the province of the action *en declaration de simulation*.

4. Wherever a fraudulent simulation exists, no matter through what instrumentalities the mask was applied—even though it be the machinery of the courts—creditors, alleging the

fraud and injury practiced on them, may resort to parole testimony to expose the simulation.

5. The fact that the trial court charged the jury erroneously as to the character of the action is not such error as justifies remanding the case. In civil causes, the jurisdiction over the law and the facts vested in this court, enables it to apply the law correctly, independently of the trial court, on the case as presented by the pleadings and evidence.

### On Rehearing.

6. Parol evidence is inadmissible to show that real estate bought by a third person was in reality bought by the complainant's debtor, and that the third person was merely a person fraudulently interposed to screen the property from complainant.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; George H. Théard, Judge.

Action by Leonard Hoffmann against Catherine V. Ackermann and others. Judgment for plaintiff, and Catherine L. Peters, defendant, appeals. Reversed.

Pierson & Pierson, for appellant. James Barkley Rosser, Jr., for appellee Hoffmann.

BLANCHARD, J. Plaintiff, a judgment creditor of Catherine V. Ackermann, unable to find property of his debtor, standing in her name, out of which he could realize the amount due him, and having reason to believe that certain immovable property standing on the conveyance records in the name of Catherine L. Peters really belonged to his debtor and had been put in the name of the interposed person as a means to screen it from his pursuit, brought the present action to have the property referred to decreed that of his debtor and subject to seizure under his judgment.

Several pieces of property stood on the records in the name of Catherine L. Peters and plaintiff started out with the idea of embracing them all within the scope of his suit, but by various exceptions and pleas filed and rulings made the issue was, at the time the trial of the case began in the court below, narrowed down to a contest involving two squares of ground designated on the Assessment Rolls of the City of New Orleans as Nos. 613 and 649, but not involving the validity of certain encumbrances consented to on the same by the owner of record.

The view we take of the action renders unnecessary a discussion of the exceptions filed by the defendant Catherine L. Peters.

Her answer was a general denial. She prayed trial by jury, which was had, with the result that a verdict was returned favorable to the plaintiff, and on this verdict a judgment was predicated decreeing the two squares of ground to the extent of one undivided third thereof the property of Catherine V. Ackermann and subject to plaintiff's moneyed judgment against her, in subordination, however, to the outstanding encumbrances resting on the whole property, placed there by Catherine L. Peters.

Defendant, Catherine L. Peters, appeals. The other defendant, Catherine V. Ackermann, filed no appearance either in the lower court, or in this.

The first question that arises for determination is the character of this action. This is to be ascertained from the allegations of the petition and from its prayer—more particularly the latter.

There is a charge that the two defendants entered into a fraudulent conspiracy to secrete the property of Catherine V. Ackermann and cover the same from the pursuit of the plaintiff, and that such conspiracy and fraudulent combination began after plaintiff had filed his suit for a moneyed judgment against Catherine V. Ackermann, but before the judgment itself was recovered, and that the same had continued down to the time the present action was begun.

There is a charge that in furtherance of the fraudulent scheme and conspiracy to defraud and injure him by preventing him from collecting his judgment against Miss Ackermann, she and Miss Peters agreed that the title to the property in contestation should be taken in the name of the latter, but for the account and benefit of Miss Ackermann, who furnished the money with which the property was bought, and that the true and real owner of the property is Miss Ackermann.

There is a charge that Miss Peters was without the means to buy the property, while Miss Ackermann had money to invest.

An amended petition charges that the property was acquired by Miss Peters and is now held by her as the property of, and for account, convenience and benefit of Miss Ackermann, with whom Miss Peters was in con-

spiracy to defraud the plaintiff and prevent him from executing the judgment recovered against Miss Ackermann, and that the property has been continuously administered by Miss Peters for the account and benefit of Miss Ackermann, to whom the former has accounted for rents and revenues, etc.

The prayers of the two petitions are, practically, the same. Miss Ackermann and Miss Peters are asked to be cited and judgment is demanded against them decreeing the property to belong to Miss Ackermann and subject to plaintiff's judgment against her. To this end, it is prayed that "said property be uncovered and restored on the public records in the name of Catherine Veronica Ackermann."

Undoubtedly, this is the action *en declaration de simulation*, and not the revocatory action, as held by our learned brother of the District Court.

The allegations and prayer of the petition make the case presented a fraudulent simulation—a *simulation*, because the real owner is Miss Ackermann and not Miss Peters; *fraudulent*, because the title was put in the name of Miss Peters in order to elude the pursuit of Miss Ackermann's judgment creditor.

It is not a suit to annul the sale by which the property was acquired in the name of Miss Peters from John B. Meyers, the vendor. Herein lies the error of defendant's counsel and the inapplicability of the authorities on which he relies.

If it were sought to annul the sale which Meyers made to Miss Peters, Meyers would necessarily have to be made a party defendant.

The simulation is not in *the title* to the property conveyed by Meyers; it is in *the name* of the party to whom the property was conveyed. The title was transferred, but placed in the name of an interposed party. Therein was the simulation.

The sale made by Meyers was and is a valid sale, and it is not attached, and the vendor's privilege and special mortgage retained by him to secure the unpaid portion of the purchase price are valid and unassailable, and the attack upon same was eliminated from the case before it went to trial.

It is not pretended that Meyers is a party to the fraudulent simulation by which the title was placed in the name of Miss Peters, instead of in that of the real purchaser, Miss Ackermann.

Meyers knew no one in the transaction but Miss Peters. He was no party to the scheme to defeat plaintiff's collection of his judgment against Miss Ackermann by placing property really purchased by her in the name of another.

Meyers, therefore—his rights and interest being in no way involved—was properly left out of the case. There was no necessity to make him a party defendant.

The simulation was a concoction, purely, of Miss Ackermann and Miss Peters'. The former was buying the property; the latter was lending her her name as a mask to cover it from the pursuit of plaintiff.

This is the theory of plaintiff's petition, and the only parties needed to be cited were Miss Ackermann and Miss Peters.

The judgment rendered in the case—if the charge of simulation be sustained—could not and would not affect Meyers. It would be merely substituting Catherine V. Ackermann as the vendee instead of Catherine L. Peters.

It matters not to Meyers who the vendee of the property is so that the sale he made is not disturbed, and his mortgage rights not affected.

Therefore, he is a party without interest in a contest between the plaintiff on one side and Miss Ackermann and Miss Peters on the other, the sole object of which is judicially to ascertain whether the vendee is Miss Ackermann or Miss Peters.

Where a person with means to invest buys a piece of property, and, with the view of screening it from his creditors, causes the title to be inscribed in the name of another, who consents thereto, that part of the transaction relating to the name used is a simulation, and to expose the mask and uncover the true owner may well be the province of the action *en declaration de simulation*, and when the intention of the real purchaser and that of the interposed person is to defraud the creditors of the true purchaser, and fraudulent simulation and injury is charged by the creditor, who brings the action, as was the case here, parole testimony is admissible *on part of the creditor* to establish

the simulation. Testart v. Belot, 31 La. Ann. 795; Nouvet v. Vitry, 15 La. Ann. 653; Telle v. Fish, 34 La. Ann. 1243.

In such case the creditor may do, in that respect, what is ordinarily denied to the real purchaser and the interposed party as between themselves.

Nor does it make any difference that the real purchaser was not known to the vendor, and that the transaction was begun and completed entirely through the interposed party. In such case it is not a mere agency to buy real estate which, ordinarily, must be proved by written evidence. Were this so, it might be impossible, ever, to establish that property is held fraudulently under simulated title by one person for another, though such were really the case, and creditors might behold their debtor in the enjoyment of large means which they would be unable to reach and make amenable to their just claims.

Wherever a fraudulent simulation exists, no matter through what instrumentalities the mask was applied—even though it be the machinery of the courts themselves—creditors alleging the fraud and injury practiced upon them may resort to parol testimony to expose the simulation. Telle v. Fish, 34 La. Ann. 1244.

In the instant case the jury found as a fact that to the extent of a third interest in the property, the title held by Miss Peters was really held for the account and benefit of Miss Ackermann, who is the true owner of such third, and that her interest is subject to the plaintiff's judgment, but in subordination, as seen, to the existing encumbrances on the whole property placed there by the apparent owner.

We quite agree with the jury in this finding, though our view of the pleadings and the facts of the case make it a case of a mask to be removed through the action in declaration of simulation, rather than an act of the debtor and her co-conspirator to be set aside and annulled through the revocatory action.

In Mackesy v. Schultz, 38 La. Ann. 385, it was held that where a sale was alleged to be "simulated and fraudulent" the court was authorized to grant relief if the evidence established either simulation or fraud, or both.

It does not appear that the defendants in that case took any exception to the petition whose averments seemed to cover both the revocatory action and the action of simulation, and a mass of evidence was taken indiscriminately, with the result that the court held that the case as to the revocatory action was made out and the sale was annulled, which judgment was sustained on appeal.

The fact that the trial court charged the jury the action was revocatory in character and not one to expose a simulation, while erroneous, is not such error as justifies the remanding of the case.

It was held in Schlater v. Wilbert & Sons, 41 La. Ann. 406, 6 South. 127, that, in civil causes, so far as errors in the judge's charge to the jury are concerned, the jurisdiction over the law and the facts vested in this court, authorized it, in its discretion, to disregard them and to apply the law correctly to the case as made on the evidence, the whole of which is before the court. See, also, Starns v. Hadnot, 45 La. Ann. 319, 12 South. 561.

Judgment affirmed.

### On Rehearing.

#### (Nov. 16, 1903.)

PROVOSTY, J. On further consideration, and after reargument, the court is satisfied that it erred in holding that parol evidence is admissible in this case. The rule is that parol evidence is inadmissible to affect title to real estate (Civ. Code, arts. 2440, 2275), and the effect of admitting it in this case would be to transfer the title to the square of ground in question from Miss Peters to Miss Ackermann.

The rule is not without its exceptions, and among them are the familiar examples where a creditor seeks by the revocatory action or the action en declaration de simulation to bring back into the estate of the debtor property which the debtor has fraudulently transferred; but this court has steadily refused to recognize as an exception to the rule the case where the purpose is to bring into the estate of the debtor real estate that has never formed any part of it.

Thus, in the case of Nouvet v. Vitry, 15 La. Ann. 653, where the debtor had lived for many years in concubinage with a colored woman, and had purchased real estate in her name—in the same manner that Miss

Ackermann is alleged to have done in the name of Miss Peters—and, after ineffectual efforts to rescue the property, had surrendered it to his creditors, in fraud of whom he had used his concubine's name for his purchases, and the syndic, acting for the creditors, brought suit to have the property declared to belong to the debtor, just as in this case it is sought to have the property in question declared to belong to Miss Ackermann, the debtor—the court refused to permit the use of parol evidence. The syllabus of the case, which correctly sets forth its doctrine, reads as follows:

"In an action by the creditors to annul a simulated sale of their debtor's property, such creditors enjoy privileges which would be denied to the debtor.

"But in a suit to make out title for their debtor the rights and privileges of the creditors are precisely the same as those of the debtor himself."

Arguendo the court said:

"This action has none of the attributes of one in revocation of fraudulent contracts, nor is it, properly speaking, one to set aside and annul a simulated deed. The plaintiff does not pretend that the sales made to Louise A. Vitry are simulated and fraudulent, for that would defeat his own pretentions. The charge is that, although the purchases were made in her name, yet Courcelle was in reality the purchaser. The object of the syndic is, not to defeat the purchases, but to make them inure to the benefit of the insolvent estate, and to succeed in this object it is necessary to make out title in the name of Courcelle, who has himself already failed in the attempt. * * * In an action to annul a simulated sale the creditor would enjoy privileges denied to the debtor—such, for instance, as that of introducing parol evidence; and the former might maintain his action, whilst the policy of the law would deny an action to the latter. Civ. Code, art. 2236.

"But in a suit to make out title for the debtor it is evident that the creditor could not claim the benefit of such a discrimination. Civ. Code, art. 2255."

Again, in the case of Barbin v. Gaspard, 15 La. Ann. 539, where forced heirs sought to show that property bought by a third person had in reality been bought by their ancestor, and the title taken in the name of the third person for the purpose of concealment from creditors, the court, although recognizing that for the purpose of introducing parol evidence the forced heirs occupy in such suits as favorable a position as creditors, refused to permit the use of parol evidence, observing as follows:

"In the third place, it is to be observed that this case is not one of those in which the forced heirs of the vendor may show by parol testimony the simulation of a sale by their ancestor, for the reason that the vendor of O. W. Snoddy is not the ancestor of the forced heirs represented by the plaintiff, and for the further reason that it does not appear by any evidence recognized by law that their ancestor ever had any title to the slave in dispute.

"There is a great and material difference between the right to introduce parol testimony to show fraud or simulation in the sale of immovable property or slaves by the ancestor, to the prejudice of the legitime of the forced heir, and the right to introduce parol testimony to show title in the ancestor to such property for the purpose of increasing the amounts of assets belonging to his estate. The former right may, in a certain class of cases, be excused; but the latter right never can be, without the consent of the defendant or party claiming adversely to the heirs. It is the latter right which the plaintiff seeks to exercise in this case, contrary to the letter and spirit of the law, as well as the will of the defendant."

Again, in the comparatively recent case of Dohan's Heirs v. Dohan, 42 La. Ann. 451, 7 South. 569, forced heirs sought to show under proper allegations that the purchase of certain real estate at public sale and several transactions thereafter had in connection with the property were in furtherance and execution of a fraudulent scheme and conspiracy to enable their mother to make a disguised donation of one-half of the property to her second husband, and that the purchaser at the public sale had been a person interposed, and the mother the real purchaser. The court said:

"The first step in their chain of proof must necessarily be to establish their ancestor's ownership of the property sought to be revendicated. They predicate her title ex-

·clusively upon the probate sale, for the suc-·cession of Rembert Harris in 1849, they say, was a person interposed to take the apparent title for the benefit of, and under obligation to convey the same to, their mother. They produce no counter letter from Harris, nor .any other written evidence to prove that the apparent title of Harris was the real title of their mother. They seek to establish her title to this immovable property, and to de-·stroy the title of Harris, now held by the defendant, M. J. Dohan, by evidence ex-·clusively parol.

"It is not pretended that the sale to Har-ris was a fraud on the rights of the plain-tiffs, as forced heirs of their mother; on the contrary, it is the sole basis of any rights they could have."

See, also, case of Burg v. Rivera, 105 La. 145, 29 South. 482.

These cases, we think, are conclusive, and ·require the rejection of the parol evidence; and, this done, the case of plaintiff remains without proof, and must be dismissed.

It is therefore ordered, adjudged, and de-·creed that the judgment appealed from be ·set aside, and that plaintiff's suit be dis-·missed, with costs in both courts.