———o———

5422.

(Court of Appeal, Parish of Orleans.)

## HENRY GERVAIS vs. JULES GERVAIS, ET AL.

1. An agent cannot acquire an interest adverse to his principal and, if he buys property belonging to his principal, he will be considered as holding it in trust for the latter.

2. A co-owner who purchases property at tax sale acquires thereby no greater interest than he had before and merely has a claim against his co-owner for reimbursement according to their respective shares.

3. The rule that parole evidence is not admissible to show that the vendee in an act of sale is not the real vendee is not without exception. It has been applied generally to cases where the purposes is to bring into the estate of the debtor or ancestor real estate that has never formed part of it, or to make out a title for the debtor.

4. It does not apply to a case where the title stood in the name of the debtor or ancestor, and where the purpose is merely to show that the agent illegally took it in his own name for his own use.

Appeal from the Civil District Court, Division "A."

J. F. Walton, for plaintiff and appellant.

A. D. Danziger, for defendant and appellee.

DUFOUR, J.—This is a suit to confirm title to certain property acquired by plaintiff in July 1886 at a tax sale for State taxes from 1871 to 1878 under Act 82 of 1884.

Pierre Gervais, the father of the parties to this suit was the sole heir of the Widow Pierre Gervais, the delinquent tax debtor, who died before the sale, and the parties to this suit are the sole heirs of Pierre Gervais, who was alive at the time the property was sold for taxes.

The defendants contend that, though the property was put in the name of plaintiff, it was in reality bought for all the co-heirs, who are each entitled to his distributive share.

From a judgment sustaining their contention this appeal has been taken.

The law and the facts of the case are clearly and forcibly stated in the following reasons for judgment of our

brother of the District Court, which, in our view, are fully supported by the record:

"It seems clear to me that when plaintiff, through C. Morel, bid in the property, it was bought, not by plaintiff for himself but for his father, who was then living, and at his father's request. It is shown that there was talk of the father getting Morel to bid it in for him, and then the arrangement was made with plaintiff, for whom, as the deed shows, Morel acted. Within the year, the father died, leaving plaintiff and defendants, as the heirs. This was back in the eighties. The mother (widow of father) occupied the place till not long before her death in 1896, when she was removed, because of her sickness; and then a sister (one of defendants) rented it, and since then plaintiff has administered and improved or repaired the buildings, etc., and had paid the taxes. The mother was disturbed in her mind and spoke of the title being put back in the name of the heirs, or her name, and the sisters of plaintiff spoke to him of this fact, and he assured them that "when the mother closed her eyes" all would be right. Plaintiff told them, if they would reimburse him, he would share the property equally with his coheirs (defendants). This they did not do. They made no demand nor did the plaintiff. There was only desultory talk, and no demand, or putting in default— but all the talk, and all the conduct prove that plaintiff did not acquire the tax title for himself, but for his father, and that after the father's death, he did not take possession as owner, but let the mother occupy it for years, and let a sister rent it out to others and only thereafter has possessed it. As agent of the father, he must be held to the strict

est good faith ("Uberrima Fides"), in favor of the father's heirs, who by his words and conduct, ever since the father's death, have been lead to believe that all the plaintiff claimed was his right of reimbursement of his outlay, from them. The act authorizing him to sue to perfect his title, has been on the statute book for years, and not until this suit, did he seek to have his tax title perfected. Under these facts, the case of **Duson vs. Roos, 123 La., 843**, sustains the defendants. If the defendants have slept on their rights, so has the plaintiff, only with this difference, that plaintiff's express words and promises and conduct lulled them into slumber, and if the speculative instinct or motive referred to in the penultimate paragraph of the opinion (**123 La., p. 844**) may be attributed to defendants, because values of property may have improved, so equally, it may be imputed to plaintiff, who, during long years, let the mother, and then a sister (one of defendants) possess; and after consistently telling defendants that all he claimed was the return of their proportion of his outlay, for taxes, etc., suddenly, and without demand or default by either party, suing out this petition in 1910 to perfect his tax title to his father's property, acquired by him at his father's request, and for his father's benefit, in 1886.

"The equitable doctrine of **Duson vs. Roos, 123 La., p. 843**, recognized by the decided cases, cited by the Supreme Court (on that page 843), sustains the defendants and none of the exceptional features of that case, on which the Court based its judgment appear in this case.

"The parties to this suit are plain people, and as sisters and brothers trusted each other.

"True, as plaintiff's counsel urges, they were

not co-owners, at the date of the tax title of 1886, to plaintiff (of the father's property, for the father's use and benefit), because the father remained the owner, to his death, subject, not to plaintiff's right to an absolute title, in the absence of redemption within the year, but as the absolute owner, subject only to plaintiff's right to be reimbursed for the tax paid or advanced for the father, at the tax sale. When the father died, less than a year after the tax sale, his title, thus burdened by the obligation to recoup plaintiff for his advances, descended to plaintiff and defendants as his heirs, and then, by inheritance they became co-owners.

"The testimony is not voluminous—but throughout, it convinces me, by very many seemingly little acts and words, that plaintiff's present assertion of exclusive ownership is an afterthought.

"Plaintiff's motion for a new trial is denied.

"New Orleans, La., June 29th, 1911.

"(Signed)    T. C. W. Ellis,

"Judge."

The evidence establishes the fact, that, when the plaintiff bought the property at tax sale, he acted as agent for his father.

It follows that by the sale, he acquired no greater interest than he held before, and merely has a claim against his co-heirs for reimbursement according to their respective shares. His tenure is in the nature of a constructive trust for his principals.

**Alexander vs. Light, 112 La., 926.**

Appellant urges here that parol evidence is not admissable to show that in a sale of real estate, the vendee named in the act was not the real vendee, but that another person was.

— 73 —

This rule is not without its exceptions, and it has been applied generally to cases where the purpose is to bring into the estate of the debtor real estate that has never found part of it, or to make out a title for the debtor.

110 La., 1070.

In this case the title was in the ancestor and the purpose is merely to show that the agent could not legally take it in his own name for his own use.

Judgment affirmed.

December 4th, 1911.

Rehearing refused, February 5, 1912.