BREAUX, C. J.
Plaintiffs sued the defendant to recover a plantation and for an accounting.
The contention of plaintiffs is: That the plantation was to be in the possession of defendant, to be disposed of to the best advantage for the late Mrs. Cambre, and that after the payment of the debts due to defendant, he was to account to her. That the plantation was thereafter sold at sheriff’s sale and bought by Lasseigne, the defendant. That he cultivated the plantation, and for a time accounted for the crops. That he was in account with Leon Godchaux, Limited, in 1901, and rendered an account to the late Mrs. Cambre, showing the balance in his hands on the 17th day of January, 1902, of $2,355.23.
That Lasseigne sold lots into which he divided the plantation, which brought at sale to various parties a total of $45,802.84. That he sold movable property on the plantation for an amount of about $10,000. That the total of all sales for which defendant should account is $58,157.07.
Plaintiffs admit that their late mother owed Lasseigne $12,453.52, which they deduct from the $58,157.07, leaving a balance due by Lasseigne of $45,693.55.
They further state that to the date of the death of Mrs. Cambre, Lasseigne always acknowledged the trust relation between her and himself and promised to render an account.
They ask for a judgment for the balance stated above.
The defendant filed an exception of vagueness and indefiniteness of plaintiffs’ petition, and interposed the plea of no cause of action, and the plea of prescription of 10 years.
The exception of vagueness and indefiniteness and no cause of action was overruled, and the plea of prescription referred to the merits. As to the other plea of an entirely formal nature — that the petition was vague *97 and indefinite — it seems, properly enough, to have received scant attention in the district court.
The position of plaintiff in exception, Lasseigne, is that there is no cause of action because plaintiffs in the suit and Cambre heirs, have not declared upon a written agreement, but specifically allege:
“That on the 28th day of March, 1901, by virtue of a verbal agreement, which is made the basis of the demand, it is sought to recover the real estate acquired by defendant at sheriff’s sale as the property of their late mother, Mrs. Cambre, and that the second allegation of plaintiffs that the purchaser of the plantation was merely an agent, is equally as fatal, for parol evidence cannot be received to create or destroy title to immovable property, or to prove an agency to buy or sell such property.”
The defendants in exception — plaintiffs in suit — state in defense that Lasseigne recognized his trust, and promised but failed to render an account, and refused to render an account to petitioners, notwithstanding amicable demand. That annexed to the petition are accounts proving the trust alleged ; also a certificate of the clerk of court is annexed.
The following is in part the heading of the account annexed:
“Rose Plantation Bought of Lasseigne & Co., Proprietors, Woodland Plantation and Store.”
The account was opened on February 26, 1901. It was closed on January 3, 1902. Another account was filed:
“Lasseigne in Account with Leon Godchaux, Limited.”
This was open January 25,1901, and closed January 3, 1902. •
The items on both these accounts consist of stated indebtedness- for advances, goods, and supplies.
The clerk’s certificate annexed relates to sales made of lands claimed by plaintiffs.
After the exception of no cause of action had been overruled, defendant filed the plea of general denial.
Subsequently the defendant, reserving “the benefit of the exceptions already filed” and reiterating the grounds of the exceptions, filed a supplemental answer, in which he stated:
That Rose plantation, heavily involved, was about to be seized; that he held a mortgage bearing on the plantation; that at plaintiffs’ request he foreclosed and purchased the property; that it was agreed that he would operate the plantation and sell it at first opportunity; that from the profit of the partnership he should deduct his advances, then the amount due him personally, and divide the balance; that he operated the plantation several years at a loss to the partnership; that in 1875, with the consent of Mrs. Cambre, he gave an option to Charles Elfer to buy the swamp lands on the plantation for $5,000; that with the consent of Mrs. Cambre, he, in accordance with the direction of Elfer, transferred the land to John M. Dresser.
That prior to this transfer, with the consent of Mrs. Cambre, the plantation other than the swamp lands was divided into lots and sold; that he accounted to Widow Cambre for the operation of the plantation and for the sales; that the mules on the plantation were sold separately from the plantation, for which he also accounted to her.
That, after a full settlement, she was indebted to him instead of his being indebted to her, etc.
We take up for decision the overruled exception of no cause of action.
[1] Title to immovable property, except when interrogatories on facts and articles are propounded, is dependent upon written evidence.
Plaintiffs’ reliance to recover the immovable property claimed is upon parol evidence (unless the plea urged in argument, based *99 on defendant’s asserted admission, had the effect of creating a title).
The following is the allegation of title claimed by plaintiffs:
“By virtue of a verbal agreement the following described plantation was purchased at sheriff’s sale by Augustin Lasseigne for the benefit of the mother of petitioners, to whom said plantation belonged up to said date.” (Italics ours.)
The fact that the plantation was sold at sheriff’s sale and adjudicated does not give rise to any difference rendering the sheriff’s sale more susceptible of attack by verbal testimony. It was adjudicated to defendant in accordance with a verbal agreement; the verbal agreement cannot affect the title.
The adjudication makes full proof.
The Hoffman v. Ackermann Case, 110 La. 1070, 35 South. 293, is directly in point.
This proposition being plain, we will not give it further consideration.
Now as relates to the alleged admission in the answer and amending answer, upon which plaintiffs evidently base their earnest hope: Defendant’s exception having been overruled, it only remained for him to file an answer.
The general denial, the only plea of the first answer, was not an admission of title, despite the fact that defendant should perhaps have reserved expressly the rights represented by the exception, as that is nearly always done, whether necessary or not.
None the less, defendant did not, by his silence in regard to the overruled exception, nor by his not alleging “right pleaded, no exception- reserved,” nor by the terms of his answer, admit plaintiffs’ title to the immovable property.
[2] The act annexed is not a title, nor is the certificate of the clerk annexed. Plaintiffs positively alleged that their suit is on a verbal contract. They cannot change their allegation and claim on the papers filed. They are not binding on the defendant.
In the supplemental answer, defendant reserved the benefit of the exceptions in regard to which he was silent in the original answer.
[3] The exception filed by defendant of no cause of action is before us for decision.
Plaving arrived at the conclusion that the exception is before us, we only have to add that in our opinion it was well taken in all that relates to the title to immovable property. Nearly all the issues, if not all, fall within the grasp of the overruled exception of no cause of action. The examination into the issues might have stopped here; none the less the writer considered the other issues presented, which possibly do not relate exclusively to the title and 'to evidence regarding realty.
[4] Plaintiffs’ insistence is that on the second ground of their action they have a right to be heard; that they still have a right to an accounting of crops, made on the place and the profits. These grounds were considered because they do not, in every particular, come within the rule of evidence relating to immovables.
A large balance is claimed by plaintiffs on the account filed.
Experts have examined the accounts between the parties, and found against plaintiffs’ claim. It is true that for the year 1901, the books had been destroyed and the statement of defendant was accepted as to some of the items. The rule adopted by the expert enabled them to arrive at a balance, which appears fair enough.
[5] We now take up for decision the largest of the claims of plaintiffs, amounting to $1,300. Defendant had given a verbal option to a Mr. Elfer to become a purchaser of certain lands for the price of $5,000. Within the limit of the option, Mr. Elfer found it possible to sell this land to Dresser for $18,-000. Elfer availed himself of his option and completed his purchase, paid $5,000 for the land, and closed the option. After the land had been sold to Dresser, defendant said to *101 Elfer that he had been remarkably fortunate; that he should allow the defendant $500, to which Elfer consented and paid the amount.
Lasseigne accounted to plaintiffs’ mother for one-half of this amount. The testimony is that Mrs. Cambre, plaintiffs’ mother, knew all about the option and the sale; and she never in the least objected, but on the contrary, consented.
It happened that in the rise and fall of the land some one unexpectedly presented himself who was willing to pay a handsome amount for the tract in question. Defendant not wishing to repudiate his word, although it was a contract not binding, consummated the sale with Elfer for the price mentioned before. Mrs. Cambre, well informed on the subject, never objected. She had signed other papers, and always ratified the acts of the defendant. Mrs. Cambre really had no title to any part of the land, and, if Lasseigne had chosen, he could have disposed of the property without consulting her in the least. When the defendant admitted the option, he is entitled to have it considered that he admitted the right of plaintiffs’ mother in the transaction, subject to his statement that he was accountable for $5,-000, price of the land paid by defendant, and not to $13,000 in addition, paid by Dresser to Elfer.
The mother has been dead about four years, and while she lived she did not claim the amount.
From the sales of the property and the operations of the crops Mrs. Cambre received some benefit From the sale to Dresser by Elfer, Lasseigne has not been in the least benefited. Mrs. Cambre has no claim based upon a title. If she be entitled to any damages, it could not very well be recovered in this suit. She would have to bring an action in damages. But it does not occur to us that she has the least right, for she was not the owner of the land disposed of; had no title, and the alleged admission of Lasseigne are not of such a character as to render him liable for the amount before mentioned.
We pass to another item of over $11,000. Plaintiffs question the correctness of the different items constituting this amount. They were amounts paid at different times. There were books kept, and it is not charged that there was fraud committed. The heirs only denied that they have received the amounts charged.
Between the memory of witnesses and books kept in good faith, the district judge gave credit to the books.
We have not found wherein he has erred in this respect.
To take up some of the details of the ease: The different amounts were charged as having been paid to the heirs in different amounts at different times, of $100, $200, $300, and $400. There is a list of these claims. The plaintiffs deny emphatically that they received these amounts.
The expert accountant who examined the books returned that, after a careful examination of the books of A. Lasseigne & Oo., in which a record, from a period extending from February, 1902, to January 4, 1910, is kept, showing the business done with Rose plantation, he found these books correct; in these books the amounts paid to Mrs. Cambre and to others are entered and appear as due by her and by her children, the plaintiffs.
It would be monstrous, if Lasseigne had charged these different amounts without having made any payment whatever to these heirs. The bookkeeper of Lasseigne, who is said to be a reputable bookkeeper, would not knowingly have given his sanction to such entries. Had he, Lasseigne, desired to take advantage of plaintiffs’ mother, or of plaintiffs themselves, he had a far more effective way before him to accomplish his purpose. He could have kept the whole property, admitted nothing, and denied everything. This he did not choose to do; he sold the prop *103 erty and accounted for the proceeds of the plantation.' As is frequently the case in planting, there were years when there were ample returns, and other years were losses that had to be met'. If the returns on the crops had always been good, these differences would not have arisen.
We will state here that one of the plaintiffs does not deny that he received the amounts charged. His testimony gives rise to the inference that whatever he received was in the nature of a loan to himself personally. He testified that he borrowed and returned the amounts. That averment is not sustained.
The district judge who heard all of these witnesses did not accept their statement. We cannot say that he has erred.
Plaintiffs through learned counsel discuss the item of $1,540.78, made up of sheriff’s costs, various items, commissions.
Plaintiffs at first in their brief claimed this amount as not having been heretofore allowed. They have abandoned it. This amount was settled, as shown by the sheriff’s deed, and properly charged. The different accounts show as per one balance that defendant was indebted to plaintiffs’ mother in the sum of $533.41. Taking another statement into account, Mrs. Oambre’s account with Rose plantation shows a balance against her which more than offsets the $533.41.
Lasseigne makes no claim for the balance in his favor.
We have looked over this statement (of Lasseigne) and it shows credit balance in favor of Rose plantation, $9,318.17. Dividing this amount, each receiving half of the proceeds of the partnership, Lasseigne would be entitled to one-half this amount, which he does not claim.
But plaintiffs deny to defendant credit for the $11,833.61, proceeds of sale paid by him, he alleges, to the store to make good the overdrafts there.
If the store was a creditor of the partnership, there was no impropriety on the part of Lasseigne in taking the partnership funds and applying them to the indebtedness arising from overdrafts.
Charging him with the $13,902.84, price paid to Elfer, and by other items, they claim $25,233.60 due by defendant to them.
In our endeavor to get at the correct figures, we have carefully examined the following, showing debits and credits for the different years:
1901.
Paid by A. Lasseigne ior mortgage notes ...................... $14,162 32
Por notarial fee.................. 20 66
Total .................................... $14,182 98
Credits.
Proceeds of crop.................. $12,228 24
Expense of crop................... 9,873 01
Net results of crop............... $ 2,355 23
Add, received on account of purchase price of plantation...... 1,000 00 3,355 23
Amount due A. Lasseigne at end of 1901 $10,827 75
1902.
Debits.
Expenses of cultivating.......... $11,205 05
Expenses and withdrawals of cash and merchandise by Mrs. Cambre ......................... 3,227 47
Total .......................... $14,432 52
Credits.
Proceeds of crop.................. $12,672 84 $ 1,759 68
Amount for A. Lasseigne at the end of 1902........................$12,587 43
1903.
Amount brought forward................ $12,587 43
Debits.
Expenses of cultivation and withdrawals by Mrs. Cambre and family ......................$ 9,686 66
Credits.
Proceeds of crop and movables sold.......$ 6,646 95
Proceeds of land sold 15,500 00
Total .............. $22,146 95 22,146 95 $12,460 29
Amount due A. Lasseigne at end of 1903 ........... $ 126 14
*105 1904.
Debits.
Withdrawals of Mrs. Cambre and family...................... $ 4,236 37
Credits.
Proceeds of land sold $ 2,000 00
Proceeds of moveables sold .................. 1,055 05
Total .............. $ 3,055 05 $ 1,181 32
Amount due A. Lasseigne at end of 1904 ............ $ 1,307 46 $1,307 46
1905.
Debits.
Withdrawal of Mrs. Cambre and family ........................... $ 2,013 18
Credits.
Proceeds of land sold $ 7,250 00
Proceeds of forfeit, Rouber .............. 300 00
Proceeds ' of bonus from Elfer .......... 500 00
Total .............. $ 8,050 00 $ 8,050 00 $ 6,036 82
Amount due by A. Lasseigne at end of 1905 .................................. $ 4,728 36
1906.
Debits.
Withdrawals of Mrs. Cambre and family ......................$ 3,041 57
Credits.
There were no lands sold that year or other movables ............................. $ 3,041 57
Amount due by A. Lasseigne at end of 1906 ......................................$ 1,686 79
1907-1909-1910.
Withdrawals of Mrs. Cambre and family .....................$ 571 69
1909.
Paid N. Burlre & Co. Ltd., account of Mrs. Cambre.......... $ 245 35
Amount forwarded ........... $ 817 04
1910.
Amount brought forward..... $ 817 04 $ 1,686 79
Paid N. Burke & Co., Limited, account of Mrs. Cambre........ 336 34
Total .......................... $ 1,153 38
Credit........None. 1,153 38
Balance due by A. Lasseigne at end of 1910 ...................................... $533 41
This brings us to the balance heretofore mentioned as due by A. Lasseigne of $533.41. (Other items of plaintiffs’ indebtedness must thus offset this amount.)
These items are taken from the statement found by the experts as correct, with the exception of the year 1901, when the books were destroyed; the different items are referred to in the transcript.
The books of the bookkeeper to which we have referred include entries of all the receipts of the crops. No other books were kept, except those by Reine.
It is also stated that at the time that Lasseigne took charge of the business and began to operate the plantation on joint account Mrs. Cambre’s liabilities were much greater than her assets. From the foregoing, it is evident that the $13,402.84 must be deducted; also the amount of over $10,000 paid to the heirs, and other sums.
In a letter, Miss Edna Cambre, daughter of Mrs. Emma Cambre, writes to defendant, and requests of him a loan for her mother. In this letter she says:
“Elle,” writing for the mother, “m’avait dit de te dire que la maison va §tre vendue par Fitzpatrick & la fin du mois et alors elle te rendra tout ce que nous te devons.”
In another letter, written after the death of Mrs. Cambre, she again acknowledges an indebtedness to defendant.
These were extraordinary requests of the mother if she at the time was a creditor, as plaintiffs now claim, instead of a debtor.
As relates to different amounts, we have considered them sufficiently to justify the conclusion that the amounts due by plaintiffs to defendant does not show a balance in favor of the former.
Having gone over all of these items, we have arrived at the conclusion that defendant is not indebted to plaintiffs.
For reasons stated, it is ordered, adjudged *107 and. decreed that the judgment appealed from is affirmed.
MONROE, J., concurs in the decree.
PROVOSTY, J., concurs in the decree, holding that the suit should be dismissed on the exception of no cause of action.
SOMMERVILLE, J., concurs in the decree.