(100 South. 786)

No. 24461.

## WALTON et al. v. WALTON et al.

(Feb. 4, 1924.  On Rehearing, June 6, 1924.)

*(Syllabus by Editorial Staff.)*

1. Evidence ☞434(11)—Parol testimony not admissible to show sale a simulation for purpose of increasing assets belonging to decedent's estate.

Under Civ. Code, art. 2239, forced heirs have no right to introduce parol testimony to show title in ancestor to land sold to another by showing that sale was a simulation and intended as security, for the purpose of increasing amount of assets belonging to the estate.

On Rehearing.

2. Trial ☞75—Objection to evidence held too late.

Where many witnesses had given parol evidence on a certain matter, and the door remained open with consent of defendants, it was too late to urge objection that parol evidence, was inadmissible.

3. Mortgages ☞38(1)—Finding that sale was not mortgage held proper under evidence.

In action by forced heirs, a finding that conveyance by decedent was not a simulation, and intended merely as security, *held* proper under evidence.

Appeal from Third Judicial District Court, Parish of Claiborne; J. E. Reynolds, Judge.

Suit by Louis Walton and others against John Jetus Walton and others.  Judgment for defendants, and plaintiffs appeal.  Affirmed.

Scarborough & Carver, of Natchitoches, and David Blackshear, of Farmerville, for appellants.

T. H. McEachern, of Homer, for appellees.

By Division A, composed of O'NIELL, C. J., and BRUNOT and ROGERS, JJ.

BRUNOT, J.  This is a suit by the forced heirs of Thomas Walton, deceased, against John Jetus Walton and the heirs of his deceased wife, to recover 40 acres of land situated in Claiborne parish, and for a money judgment for the mineral lease value thereof and the value of certain royalties.

From a judgment rejecting plaintiffs' demands at their cost, they have appealed.

The record discloses that A. McCraine obtained a judgment against Thomas Walton, on December 21, 1904, for $359.74, with 8 per cent. interest thereon and 10 per cent. attorneys' fees, subject to three credits totaling $128.04.  About nine years thereafter McCraine threatened execution of the judgment and the seizure of the land in controversy. At this time the sum due McCraine on the judgment, including the accrued interest, was

$332.50. On January 18, 1914, Thomas Walton sold and transferred the property to John Jetus Walton, the consideration of the sale being the satisfaction and payment by the vendee of the McCraine judgment.

John Jetus Walton paid the judgment, took physical possession of the property, and since that time he has exercised all of the rights of ownership thereof. It appears from the testimony that the price fixed in the act of sale was all that the property was worth at that date.

The prayer of plaintiffs' petition with reference to the property is for a judgment decreeing the sale from Tom Walton to John Jetus Walton to be a simulation "and really intended by both parties thereto as a security contract."

Thomas Walton died during the month of December, 1919, and from January 8, 1914, the date of the sale, until his death, he did not at any time question John Jetus Walton's title and ownership of the property; neither did he assert during that time any claim thereto nor any interest therein. His failure to do so is more than significant because the lease of the property to Hamilton and the sale of one-half of the oil and gas beneath the surface of the property to Menefee & Fortson were executed by John Jetus Walton long before Thomas Walton's death, and the sum realized by John Jetus Walton from these transactions exceeded the purchase price of the property.

The district judge in his well-reasoned opinion correctly says:

"If this was the suit of Tom Walton, instead of his heirs, against John Jetus Walton, the plaintiff would be barred from recovery under the authority of Franklin v. Sewall, 110 La. 292, 34 South. 448."

In the opinion from which we have quoted the Judge considered plaintiffs' contention that under article 2239, C. C., the heirs of Thomas Walton are in a better position than he would be if he was living and had brought this suit, and he cites Hoffmann v. Ackerman, 110 La. 1070, 35 South. 293, in support of his conclusion that plaintiff's contention is erroneous.

[1] In the Hoffmann Case the court announces the doctrine that, while heirs may introduce parol testimony to show that an agreement entered into by their ancestor, in fraud of their rights, is a simulation, the heirs cannot increase the succession of their ancestor by bringing into it property that had not been fraudulently transferred by him. In that case Mr. Justice Provosty, as the organ of the court, interprets article 2239, C. C., and says:

"There is a great and material difference between the right to introduce parol testimony to show fraud or simulation in the sale of immovable property or slaves by the ancestor, to the prejudice of the légitime of the forced heir, and the right to introduce parol testimony to show title in the ancestor to such property for the purpose of increasing the amounts of assets belonging to his estate."

The plaintiffs in this case are seeking to show title in their ancestor to the property in dispute for the purpose of increasing the amount of assets belonging to his estate, and are relying principally upon oral testimony of a more or less doubtful character to establish that the sale from their ancestor to the defendant was in reality a mortgage.

We are of the opinion that the doctrine announced in Hoffmann v. Ackerman must be overruled before they can be permitted to do this, and, as that doctrine should be adhered to rather than overruled, the judgment appealed from is correct, and it is therefore affirmed at appellant's cost.

On Rehearing.

By the WHOLE COURT.

LECHE, J. On reconsideration we find that the present action has not for its purpose the creation of title to immovable prop-

erty by parol evidence. If it were such an action then the decisions in Hoffmann v. Ackerman, 110 La. 1070, 35 South. 293, Hanby v. Texas Co., 140 La. 195, 72 South. 933, Barrow v. Grant's Estate, 116 La. 953, 41 South. 220, Succession of Block, 137 La. 307, 68 South. 618, and others therein-cited, holding that parol evidence is not admissible to prove that property purchased in the name of one person was in fact purchased for another, would be appropriate. But the present action was instituted to have what purports on its face to be an absolute sale declared to be a contract of security, as a mortgage or pledge with a right of redemption. The petition of plaintiffs admits that a consideration was paid to the vendor by the vendee, and that the vendee went into possession of the property, but alleges, however, that it was agreed that the property would be retroceded to the vendor when the consideration, said to be a loan, was returned by the vendor to the vendee. The petition does not allege that any time was fixed within which the so-called loan should be paid.

The act of sale is alleged to have been passed on January 8, 1914, and the suit was filed July 20, 1920.

. Plaintiffs allege as a conclusion that, considered as a sale, said act of January 8, 1914, is a simulation, and they contend that they are entitled to prove the allegations of their petition by parol evidence, under the provisions of article 2239 of the Civil Code, as amended by Act No. 5, p. 12, of 1884.

Article 2239, C. C., provides that forced heirs shall have the same right to annul absolutely and by parol evidence the simulated contracts of those from whom they inherit, etc. It is very questionable whether a sale made as alleged in plaintiffs' petition is such a simulated contract as was intended to be included within the terms of the cited article. There is no doubt, for it is admitted, that the sale of January 8, 1914, was real and genuine.

There was a consideration paid by the vendee to the vendor, and the written act was not a mere sham. Of what plaintiffs do in reality complain is that the act did not contain the whole and entire agreement between the parties, inasmuch as it did not stipulate the right of redemption, and for that reason they allege as a conclusion that it was a simulation.

The purpose of the cited provision of article 2239, C. C., was to provide a remedy in favor of the forced heir to enable him to annul simulated contracts which were intended to wrongfully or fraudulently deprive him of his inheritance. It is not pretended or even hinted that the ancestor through whom plaintiffs claim had the remotest idea of depriving plaintiffs of their inheritance, and for that reason it is exceedingly doubtful whether the facts alleged by plaintiffs justify their recourse to the provisions of the article of the Code which they invoke.

[2] According to the note of evidence taken on the trial of the case, however, parol evidence was admitted without objection to prove the allegations of plaintiffs' petition, and we therefore do not believe that there is any reason why we should rule upon the admissibility of that evidence. The sole objection we have been able to find was made while one Alvin Hall was on the witness stand, and after many other witnesses had testified on the subject-matter in dispute, and the door for the admission of parol evidence had with the consent of defendants remained wide open. It was then too late to urge the objection.

[3] The salient facts as we gather them from the record are that Tom Walton owed several debts, one of which was in the shape of a judgment; that, being pressed, he sold the land in dispute to his brother, John Jetus Walton on January 8, 1914, in consideration of the payment of those debts by the latter; that the price was fair and adequate, and

that John Jetus Walton at once went into possession of the property. The land remained in the possession of John Jetus Walton and his children, and no demand was made for the return of the property, and no offer was made to reimburse the price which had been paid. Valuable minerals were discovered or supposed to have been discovered under the land in 1919, and though Tom Walton died thereafter, in December, he took no steps to exercise his alleged right of redemption.

Several of the plaintiffs testified that their Uncle Jetus had recognized that he was under obligation to retrocede the land, and that he had even made a written memorandum in a little book entitled "Guide for Deacons" of the amount due him by Tom. Defendants on the other hand deny with equal tenacity the truth of the admissions alleged to have been made by Jetus.

The testimony is conflicting, and is by no means sufficiently convincing to affect the authentic declarations made in the act of sale in January, 1914, at a time not suspicious and long before the discovery of minerals under the land.

We believe the judgment appealed from does full justice between the parties, and for that reason our former decree is reinstated and made final.